## 34048. BOOKER v. THE STATE.

HALL, Justice.

Michael Anthony Booker, appellant, was indicted in Fulton County with Michael Dixon, Raymond Burgess and Terri Jean Jones in October, 1977, for the murder of Danny Earl Cotton, a 19-year-old service station attendant. Booker received a separate trial, was found guilty, and was sentenced to life imprisonment. This is his appeal.

At trial, the state introduced evidence as follows: the victim, Danny Earl Cotton, was at work at a self-service gasoline station in the early morning hours of September 28, 1977. Between 1:30 and 1:45 a.m., a blue Cutlass automobile drove in with four black occupants, a female and three males. The four robbed Cotton and Michael Perry Echols, a friend who was visiting him at the station. The four then kidnapped the two boys and drove to a secluded area of Fulton County where the car was stopped and the hostages were ordered to get out. One of the robbers who had a gun said, "See those woods, run for them." Cotton and Echols ran; shots were fired; Cotton groaned and fell over, having been shot through the back of the neck with the bullet exiting through the right cheek. He died quickly. Two shell casings were later found near his body. Echols escaped and testified at trial. He identified Booker as one of the robbers, testifying that he was "100 percent" sure.

Fifteen-year-old Michael Dixon was arrested

subsequently in the course of another robbery. A .32 caliber automatic pistol was taken from him during that later robbery, and the ejector marks on the shell casings found near Cotton's body matched the ejector mechanism on Dixon's pistol. Dixon implicated Raymond Burgess as a co-offender in the Cotton murder. Burgess led police to Booker's home, but did not know his last name. Booker was not at home but officers learned his last name. When the police returned to the station, almost immediately an informant's telephone call came in saying that Booker "is in a skin game at 582 Lindsey Street, and he is fixing to leave." Three officers rushed to the Lindsey Street address and arrested Booker in a gambling house. They recognized him because the informant had told them he was dressed entirely in black. Booker implicated the fourth offender, Terri Jean Jones.

Other events of the evening in question were proved by the state as follows:

Nix and Cross were occupying a room at the Sun Dial Motel off interstate highway I-75 the night of September 27-28. Three men, one of whom was armed, forced their way into the room and took the victim's money and valuables, including Nix' .38 caliber pistol. (Nix identified the pistol purchased in late September or early October by another witness, Smith, from Burgess, as her stolen gun.) The perpetrators escaped when a security guard came to the door. Cross saw a light blue car leaving the motel after the men fled.

Both Nix and Cross identified Burgess as one of the three perpetrators. Nix identified Dixon, Booker, and Burgess as the robbers.

Shortly past midnight on September 28, 1977, Douglas Evans was walking on I-285 when a blue Cutlass slowed down and the occupants offered him a ride. Evans stated that he accepted and entered the car which contained one black female and three black males. The driver asked Evans if he knew which gas station managers were armed and which stations were open or closed. Following this questioning, Evans, at his request, was let out unharmed at an exit. Booker's co-indictees, Burgess and Jones, were brought into the courtroom and identified by Evans as occupants of the Cutlass. Evans

further stated that Booker resembled the passenger in the front seat, but he was not positive of his identification. Evans also testified that he knew Danny Cotton, having gone to school with him for several years.

Detective Perkins testified that Booker made a statement after his arrest on October 14, saying that he, Burgess, Dixon and Jones were riding around in an Oldsmobile one night about three weeks previously. Burgess and Dixon discussed robbing a motel and decided to stop at the Sun Dial Motel. Booker, armed with a .32 entered a motel room with Burgess and Dixon. Burgess stole a .38 pistol among other items from the occupants. When a security guard knocked and then left, they fled the motel. The robbers then picked up a male on I-285 whom they questioned about gas stations they might rob. After letting the hitchhiker out, Booker and the others went to a Union 76 station where two young males were working. They robbed and kidnapped the victims. Dixon was angry that Cotton did not have the key to the big safe.

According to the statement, Booker was in the front passenger seat and Burgess was driving. The victims had to keep their heads down and Booker admitted that he and Dixon hit the victims if they looked up. Dixon made the statement that he had one shot left and was going to use it on someone that night. Booker suggested they let the two boys out.

They drove to Bankhead Court off Bankhead Highway where they stopped and got out. Cotton and Echols were told to run. Booker stated that he shot first into the air with his .32. Dixon shot twice with a .32. Burgess had the .38. After one boy fell, the perpetrators got back into the car where Dixon stated that if the boy was dead, he was dead and Dixon did not care. Burgess and Dixon then drove Booker and Jones to Ms. Jones' house.

Another state's witness, Gary Jackson, had lent his car to Raymond Burgess the night before the murder. That car was identified by Echols as the car in which he was kidnapped. Douglas Evans, the hitchhiker, also identified the car as the one in which he rode with four persons who appeared to be searching for a gas station to

rob.

1. On this appeal, Booker first enumerates as error the trial court's denial of his two notices to produce, filed pursuant to Code Ann. § 38-801 (g), seeking photographs and other information concerning suspects and lineup participants shown to victims for identification.

The facts adduced by the state at the motion hearing showed that Booker's attorney had already been given complete access to the state's file on three occasions for a total of over six hours, and that the prosecutor's files did not and had not contained the photographs and lineup information sought. Those photographs were in the custody of the Atlanta Police Department, and the names of officers who had shown photographs to victims had been made available to Booker's attorney from the state's file. Booker's attorney admitted he had not sought the photographs from the police department or from any officer, either formally or informally, because he took the position that the prosecutor as "the titular head of this entire investigation" should produce it for him.

The trial court on these facts did not err in refusing to require the prosecutor to go out and seek this information desired by the defense. *Rini v. State,* 236 Ga. 715, 717-718 (225 SE2d 234) (1976); *Hicks v. State,* 232 Ga. 393, 394-395 (207 SE2d 30) (1974).

2. The facts of the crimes detailed above show a logical connection between the motel robbery and the instant robbery and murder, sufficient to justify the state's use of evidence of the former crime (in which Booker was positively identified by Nix as a robber) as a similar transaction to show Booker's identity here. These crimes are connected as parts of the same crime spree, involving targets of opportunity, the same night, the same participants, the same automobile, the same gun. *Clemson v. State,* 239 Ga. 357, 360-361 (236 SE2d 663) (1977); *Glass v. State,* 239 Ga. 78 (235 SE2d 513) (1977); *Hampton v. State,* 238 Ga. 608 (234 SE2d 521) (1977). Booker's objection here that certain of Nix' answers flowed from unduly leading questions by counsel raises nothing that could be reversible error. *East v. State,* 135 Ga. App. 291 (217 SE2d 490) (1975). The transcript shows that he objected only to two questions as leading, and the

trial court did not err in overruling both objections. The questions were not significantly objectionable. The answers were relevant and admissible. Id.

3. Booker's third enumeration of error, claiming that his statement should have been suppressed as the result of an unlawful arrest without a warrant, is plainly without merit. Booker's attorney conceded at the motion hearing that there was probable cause for his arrest, and the facts as detailed above provided exigent circumstances authorizing a warrantless arrest. Code Ann. § 27-207 (a); *Creecy v. State,* 235 Ga. 542 (221 SE2d 17) (1975); *Chaney v. State,* 133 Ga. App. 913, 916 (213 SE2d 68) (1975). Booker's statement was not inadmissible as the product of an unlawful arrest.

4. One witness' testimony was that, prior to his taking the stand to testify to the contents of Booker's statement, the state's attorney asked him if he remembered what Booker had told him. Booker asserts that the rule of sequestration of witnesses (Code Ann. § 38-1703), was thereby violated. We conclude that no such violation occurred on these facts. *Bennett v. State,* 107 Ga. App. 284 (129 SE2d 820) (1963).

5. Despite his argument to the contrary, there was no substantial question of Booker's identity as one of the participants in this crime, and the court's charge as given was adequate on this point. Therefore, there was no error in the court's refusing his requested charges number-ed 3 and 4 on identity. Number 4 was particularly inappropriate, inasmuch as it was two typed pages in length and would have implied to the jury that Booker's identification was in substantial doubt. This enu-meration of error is without merit. See *Young v. State,* 226 Ga. 553, 557 (176 SE2d 52) (1970); *Micheli v. State,* 222 Ga. 361 (149 SE2d 803) (1966).

6. There is absolutely no evidence in this record of voluntary manslaughter or involuntary manslaughter. Therefore, the court did not err in refusing to charge those crimes as lesser included offenses. *Gillespie v. State,* 236 Ga. 845, 847 (225 SE2d 296) (1976); *Hill v. State,* 236 Ga. 703, 706 (224 SE2d 907) (1976); *Stonaker v. State,* 236 Ga. 1 (222 SE2d 354) (1976). Cf. *Welborn v. State,* 236 Ga. 319, 320 (223 SE2d 698) (1976). The requested charge on

conspiracy, tracking the language of Code Ann. §§ 26-3201 and 26-3202 was properly refused, because there was no evidence of Booker's attempted withdrawal from the criminal enterprise.

*Judgment affirmed. All the Justices concur.*

SUBMITTED SEPTEMBER 15, 1978 — DECIDED JANUARY 4, 1979.

*Robert M. Coker,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.