## 35467. SMITH v. THE STATE.

BOWLES, Justice.

Appellant Willie Alfred Smith was indicted in the Superior Court of Richmond County along with three co-defendants and charged with the offenses of malice murder, armed robbery, and felony murder. He was tried separately from his co-indictees, found not guilty of malice murder, but guilty of felony murder and armed robbery. He was thereafter sentenced to life imprisonment for the offense of murder. Following the overruling of his motion for a new trial he filed a timely appeal to this court. The general grounds are not assigned as error but appellant specifies five other separate enumerations. Each assignment will be dealt with in order of their presentation and other facts necessary to a consideration of each assignment will be dealt with in the opinion.

1. Appellant complains that the trial court erred in not striking from the record, over appellant's objection, that portion of Lt. Sanders' testimony referring to the appellant asserting his right to remain silent.

Lt. Sanders, an investigator for the Richmond County sheriff's department, testified that after defendant was arrested, he was advised of his constitutional rights and taken to headquarters. Lt. Sanders attempted to talk to the defendant about the investigation and testified " . . . he said he didn't want to talk to us. He knew nothing about . . ." At this point counsel for defendant objected on the ground that defendant had a right to remain silent and asked that the entire statement be stricken from the record. The trial court sustained the objection and instructed the jury to disregard what the witness had said beyond the point in his statement that ". . . he didn't want to talk . . ." Appellant contends that the trial court erred in allowing the jury to consider the statement of the defendant that

"he didn't want to talk . . ." and that doing so violates his rights under the Fifth Amendment of the United States Constitution. The Fifth Amendment states in part that no person ". . . shall be compelled in any criminal case to be a witness against himself." This portion of the Fifth Amendment is applied to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U. S. 1 (1964).

Pretermitting the question of whether or not defense counsel preserved the point by proper objection during the trial, we hold there is no merit to appellant's contention that the testimony denied appellant his Fifth Amendment right to remain silent. The question we must decide is whether this bare remark remaining in the record and in the jury's mind produced a trial which was fundamentally unfair so as to deny appellant due process. We note initially that the trial court sustained the objection. The error, if any, would be the trial court's failure to instruct the jury to disregard all of what the witness said in regard to the defendant's silence. The trial court merely instructed the jury to disregard what the witness said beyond the point that he didn't want to talk. The remarks of the witness in this case in our opinion do not amount to reversible error. Every comment directed toward a defendant's silence will not be cause for an automatic reversal. While we cannot say that the evidence against the defendant in this case is overwhelming, we do say it is substantial and is without contradiction. In rebuttal to the state's case, defendant offered a defense which if believed could merely amount to an alibi. We recently considered a similar situation in *Williams v. State*, 242 Ga. 757 (251 SE2d 254) (1978). *Williams* cites approvingly Stone v. Estelle, 556 F2d 1242, 1244 (5th Cir. 1977) (cert. den. 434 U. S. 1019 (1978)) which in turn recognized the real issue before the court was whether the remarks had produced a trial which was fundamentally unfair so as to deny appellant due process. Other cases considering the point and holding the error to be harmless are United States v. Wick, 416 F2d 61 (7th Cir. 1969) (cert. den. 396 U. S. 961) (1969)) and United States v. Kaplan, 576 F2d 598 (5th Cir. 1978). The comment of the witness in the instant case was unrelated

to defendant's innocence, nor was it related to his defense of alibi. Thus, the harm to defendant as illustrated in Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976) is not present here. In this case the comment of the witness was not directed to any particular statement or defense offered by appellant. To reverse a conviction the evidence of the defendant's election to remain silent must point directly at the substance of defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury. No such situation exists here. As to harmless error, compare *Shepherd v. State,* 239 Ga. 28 (1) (235 SE2d 533) (1977) and Schneble v. Florida, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972).

*DeBerry v. State,* 241 Ga. 204 (243 SE2d 864) (1978) relied on by appellant is distinguishable. While the opinion in that case might well indicate that this court agrees that the introduction into evidence of the state's case in chief, that appellant made no statements to the police when he was arrested, might violate his Fifth Amendment rights under the United States Constitution, nevertheless, the holding in that case was based on waiver. This is not to imply that the bare introduction of evidence regarding the silence of an accused is error in all other cases when waiver is not applicable.

2. The next two enumerations will be considered together. Appellant complains that the trial court erred in permitting the district attorney to interview after the commencement of the trial and over the appellant's objection, two prospective witnesses, co-indictees, who were under the rule of sequestration. He also complains in that regard that the court erred in not requiring the official court reporter to record or take stenographic notes of the interview between the district attorney and these two sequestered witnesses. He contends that this failure denied him his Fifth Amendment right to a fair trial.

The sequestration of witnesses is a basic and fundamental right to a fair trial in every case. It develops and preserves the truth better than any other procedure known to the courts. It should not be violated except from necessity.

In the instant case the two prospective witnesses which the district attorney requested the court to allow

him to interview after the trial had started, were two of appellant's co-indictees. Before permitting the interview the request of the district attorney was properly made to the court in open court. Before passing on the motion the court took the following precautions:

"THE COURT: Alright, Mr. Allen (the district attorney), would you perfect the record at this time?

"MR. ALLEN: Yes, your Honor, as the record shows, we called to the witness stand Mr. Robert Steve Hogan. I think the record also shows he is a co-indictee in this case. Another co-indictee the State expects to call is Marlin Bell. After asking the Deputy to go down and bring the witness to the witness stand I received word that both witnesses refused to testify until they had occasion to talk to me. I would further like the record to show that some communication was made by and through counsel for one of the defendants of threats. I can't go into detail, but threats in the event they did testify. Counsel for Mr. Hogan, that's Mr. Kenneth Chance, an attorney, informed me last night that his client would testify in spite of the threats. However, in view of this new development I would request permission to talk to these witnesses. I realize they are under the rule of sequestration. I would not discuss any anticipated testimony or any testimony that has been given in the trial. I would like to talk to them. I have no objection to defense counsel accompanying me.

"THE COURT: I inquired of defense counsel if he had any objection and he said he did and I told him I was going to grant you permission to interview the prospective witnesses and would extend to him the privilege of being present if he wished to do so. Is that what transpired, Mr. Blount? (counsel for defendant)

"MR. BLOUNT: Yes, sir.

"THE COURT: Do you wish to add anything to the record?

"MR. BLOUNT: No, sir.

"THE COURT: All right, you may interview the witnesses and Mr. Blount, you may accompany him if you wish to do so. (Mr. Allen and Mr. Blount retired from the courtroom together.)"

Thus, upon assurances of counsel that no anticipated

testimony nor any testimony that had been given in the trial would be discussed the court allowed the request. He also permitted defense counsel to accompany the prosecutor and was present during the discussions with the witnesses. Upon return to the courtroom, defense counsel raised no allegation that any impropriety had occurred, made no motion for a mistrial, and made no objection to the state's next witness, who was Robert Steve Hogan. Neither did defense counsel object when Mr. Bell, the other witness, was called to testify for the state.

Appellant's counsel filed a motion for new trial in the instant case. In support of that motion no evidence was offered and no complaint was made that any impropriety occurred in the interview permitted by the court to the prosecutor. The applicable Code section, § 38-1703, provides: "In all cases either party shall have the right to have witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." In *Bennett v. State,* 107 Ga. App. 284 (3) (129 SE2d 820) (1963), that court held: "No harmful error is shown in a case where, after the witnesses have been sequestered, the solicitor general interviews a witness before placing him on the stand in the absence of an allegation that such witness was informed of what other witnesses had testified or what he was expected to testify. *General Oglethorpe Hotel Co. v. Lanier,* 99 Ga. App. 401 (108 SE2d 769)." *Bennett v. State* was cited approvingly in a similar situation in *Jackson v. State,* 235 Ga. 857 (221 SE2d 605) (1976). While we do not subscribe to the rule that violations to the rules of sequestration never render a witness incompetent to testify we comment that the courts generally do not follow such a policy. See *Byrd v. Brand,* 140 Ga. App. 135 (4) (230 SE2d 113) (1976). We conclude here that the trial court has discretion in permitting, upon request, counsel for one of the parties an opportunity to converse with a witness in the case for limited purposes, and that discretion will not be controlled unless abused. In the absence of some allegation of impropriety raised either at the trial or in the motion for new trial we cannot say that the appellant

was prejudicially harmed. *Davis v. State,* 242 Ga. 901 (3) (252 SE2d 443) (1979); *Jarrell v. State,* 234 Ga. 410, 420 (e) (216 SE2d 258) (1975).

Neither can we say that the trial court abused its discretion in not requiring the recordation of the interview permitted between the prosecuting attorney and the witnesses absent some specific allegation of a particular harm or prejudice which appellant suffered as a result of that interview. If appellant does not contend that any impropriety occurred during the interview[1] we will not consider error in the abstract. Appellant must illustrate error which has harmed him. *Davis v. State,* 242 Ga. 901 (1), supra; *Fore v. State,* 237 Ga. 507 (228 SE2d 885) (1976); *Chenault v. State,* 234 Ga. 216, 220 (215 SE2d 223) (1975). Accord, *Stephens v. Hopper,* 241 Ga. 596 (2) (247 SE2d 92) (1978).

Appellant relies on United States v. Selva, 559 F2d 1303, 1306 (5th Cir. 1977), which requires what appears to be an automatic reversal without a showing of specific prejudice or error whenever an appellant is represented by new counsel on appeal, and there is an absence of a substantial, significant portion of the record. We do not believe that even the strong rule announced in United States v. Selva would require the recording of permitted interviews of witnesses outside the presence of the court, when no request for the same was made and when counsel for both parties were present and offered no objection upon completion of the interview. Our courts are not that mechanistic. To so hold we would have to impute impropriety on the part of appellant's trial counsel. This we will not do. "A party can not during the trial ignore what he thinks is an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221) (1951); *Fleming v. State,* 236 Ga. 434, 441 (224 SE2d 15) (1976). Both enumerations are without merit.

---

[1] We have heretofore noted counsel for appellant did not suggest in any way such impropriety upon his return to the courtroom following the interview which he was permitted to attend and did attend.

3. Appellant contends that the trial court erred in admitting over appellant's objection, certain portions of the testimony of co-indictee Marlin Bell, concerning a conversation during which appellant and co-indictee Quarterman told Bell what happened when Quarterman froze at the door, as such testimony constituted hearsay.

During the trial appellant's co-indictee, Marlin Bell, testified that after defendant, Quarterman and he had removed the safes from the victim's house they proceeded to the appellant's apartment. There the safes were unloaded and Bell returned the van to his roommate. Upon returning to the appellant's apartment approximately 45 minutes later he found present Steve Hogan, the appellant and Quarterman. After splitting some of the money a discussion occurred concerning the incident. The following testimony was given at trial:

"Q. Tell us what discussion you had there that night after Hogan left.

"A. We discussed what had happened. At that time Smitty and Q. T. were telling me what had happened and how they felt and how at that time Q. T. froze.

"Q. At what point did he freeze?

"A. When he went to the man's door and opened the door and stepped in and froze.

"Q. And when Quarterman froze what did this defendant say happened?

"MR. BLOUNT: Your Honor, I object to that. He wasn't there when all of this was going on.

"THE COURT: I overrule the objection.

"Q. Who were you talking to in the defendant's apartment about what happened?

"A. Talking to Smitty and Q. T.

"Q. The defendant and Quarterman?

"A. Yes, sir.

"Q. What did they say happened when Quarterman froze right at the door?

"A. Smitty was there and the man turned around and saw them and Smitty jumped in and took the gun and shot him."

It is obvious that the testimony complained of dealt with conversations between the witness and the appellant

himself. For that reason alone the objection as hearsay would not be a valid one.

Nevertheless, complaint is made that the conversation at that time in regard to Quarterman would not be admissible unless it was shown that the appellant was present at the time of the conversation. Irrespective of the first point, our Code section 38-306, provides: "After the fact of a conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." The pendency of the conspiracy not only extends through the activities engaged in by the parties in carrying out any portion of the criminal act, but also extends into the concealment stage of the criminal enterprise. *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Knight v. State,* 239 Ga. 594 (238 SE2d 390) (1977). Compare *Evans v. State,* 222 Ga. 392 (150 SE2d 240) (1966). The testimony was not subject to the objection made.

4. Appellant complains that the trial court erred in overruling his exception to the following specific charge: "Where the evidence shows the commission of a homicide by the accused by the use of a deadly weapon, the law presumes murder." He contends that this charge impermissibly shifts the burden of proof to appellant to prove otherwise. Ordinarily this enumeration of error would require an examination of the charge under Sandstrom v. Montana, — U.S. — (99 SC 2450, 61 LE2d 39) (1979) wherein the court held that the jury instruction "the law presumes that a person intends the ordinary consequences of his voluntary acts," standing alone, could be interpreted by a jury as an irrebuttable presumption or as one which shifts the burden of persuasion to the defendant and, therefore, erroneous. Such an examination is not necessary in this case. Appellant was convicted of felony murder and not malice murder. The complained of charge is irrelevant to felony murder in which the only requirement of proof is that a homicide was committed during the course of an armed robbery in which appellant participated. All the elements of armed robbery had to be proven and were clearly proven. Appellant makes no objection to any of the trial court's charges on armed robbery or felony murder. Consequently, any error in the

charge complained of was harmless to this appellant.[2]

Appellant suggests that somehow the complained of charge tainted the requirement of the state to prove intent as one of the elements of armed robbery. This argument has no merit as the trial court clearly and correctly covered the issue of intent by including the following charges in its general charge:

(a) "Every person is presumed innocent until proved guilty. No person shall be convicted of a crime unless each element of such crime is proved beyond a reasonable doubt.

(b) "The defendant enters into the trial of this case with the presumption of innocence in his favor and that presumption remains with him throughout the trial and until his guilt is established by the evidence beyond all reasonable doubt.

(c) "The burden is upon the State to prove every material allegation in this indictment against this defendant to a moral and reasonble certainty and beyond all reasonable doubt.

(d) "A crime is a violation of a statute of this state in which there shall be a union of joint operation of act and intention.

(e) "A person will not be presumed to act with criminal intention but you may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the defendant is prosecuted."

The assignment is without merit.

*Judgment affirmed. Undercofler, P. J., Jordan, and Marshall, JJ., concur. Nichols, C. J., and Hill, J., concur specially.*

ARGUED OCTOBER 10, 1979 — DECIDED DECEMBER 5, 1979 — REHEARING DENIED DECEMBER 20, 1979.

*Elizabeth C. Calhoun,* for appellant.

*Richard E. Allen, District Attorney, Arthur K.*

---

[2]We note that this charge was repeated in the trial court's recharge on malice murder of which appellant was specifically acquitted.

*Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.

HILL, Justice, concurring specially.

I concur in the judgment. I am unable, however, to concur in all that is said in Division 2.

In that division, in discussing the rule of sequestration, the majority says that ". . . the trial court has discretion in permitting, upon request, counsel for one of the parties an opportunity to converse with a witness in the case for limited purposes, and that discretion will not be controlled unless abused." Clearly, the majority has found that the sequestration rule prohibits counsel for one of the parties from conversing with a witness without the permission of the court.

The majority's finding that sequestration prohibits, without court approval, an attorney from interviewing a witness under the rule is further demonstrated by the majority's statement that ". . . the request of the district attorney was properly made to the court in open court." The district attorney stated that not only would he not discuss "any testimony that has been given" but that he "would not discuss any anticipated testimony." The majority notes that the request was allowed "upon assurances of counsel that no anticipated testimony nor any testimony that had been given in the trial would be discussed . . ." And the majority emphasizes that defense counsel raised no allegation that any impropriety had occurred in the interview.

The majority has expanded the prohibitions of the rule of sequestration of witnesses. The rule itself has been codified in Code § 38-1703 as follows: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." The sequestration rule, when invoked, expressly prohibits one witness from overhearing the testimony of another witness. The rule would be violated if a witness or person who heard the witness testify related the testimony to another witness. Thus, the court is given the power to "take proper care to

effect [the object of the rule] as far as practicable and convenient." However, the codified rule does not prohibit an attorney from conversing with a witness without court approval. The majority has expanded the codified rule to prohibit any such conversation so as to insure that the attorney does not directly or indirectly relay the testimony of other witnesses. In doing so, the majority has overruled two decisions to the contrary.

In *Booker v. State,* 242 Ga.. 773, 777 (251 SE2d 518) (1979), a witness testified that prior to taking the stand, the prosecutor had asked him if he remembered what the defendant had told him. The defendant contended that the rule against sequestration had been violated. This court concluded that these facts showed no violation of the rule. Therefore, according to *Booker v. State,* supra, the prosecutor can converse with a witness without court approval without violating the rule.

In *General Oglethorpe Hotel Co. v. Lanier,* 99 Ga. App. 401 (2) (108 SE2d 769) (1959), defense counsel objected that during a recess plaintiff's counsel had talked to two witnesses involving a material point in the case. The court noted that the motion was predicated upon the assumption that the conduct of plaintiff's counsel violated the rule. The court said: "A careful examination of the motion for mistrial and the ground of the motion for new trial discloses no allegation that plaintiff's counsel interviewed either of the witnesses mentioned in the motion in the presence of the other or informed either of them of what the other, or any other witness, had testified or was expected to testify.

"The ground does not show error."

The rule prohibits counsel from informing witnesses what other witnesses have testified or will testify. It does not prohibit counsel from even interviewing a witness. It does not prohibit counsel from dicussing material points with a witness. Moreover, it does not require that counsel obtain the court's permission before interviewing a witness.

The majority has rewritten the Code section and the rule of sequestration of witnesses contrary to the decisions and the requirements of the rule.

I am authorized to state that Chief Justice Nichols

joins in this special concurrence.