## 35529. McCLESKY v. THE STATE.

UNDERCOFLER, Presiding Justice.

Warren McClesky appeals his convictions of murder and two armed robberies. He was sentenced to death for murder and life imprisonment for each armed robbery, all sentences to run consecutively.

### Summary of Facts

From the evidence presented at trial, the jury was authorized to find the following facts:

On the morning of May 13, 1978, appellant, using his car, picked up Ben Wright, Bernard Dupree and David Burney. All four had planned to rob a jewelry store in Marietta that day. After Ben Wright went into the store to check it out, they decided not to rob it. All four then rode around Marietta looking for another place to rob but couldn't find anything suitable. They drove to Atlanta and

decided on the Dixie Furniture Store as a target. Each of the four was armed. Appellant had a .38 caliber Rossi nickel-plated revolver, Ben Wright carried a sawed-off shotgun, and the two others had blue steel pistols. Appellant parked his car up the street from the furniture store, entered the store, and "cased" it. After appellant returned to the car, the robbery was planned. Executing the plan, appellant entered the front of the store and the other three came through the rear by the loading dock. Appellant secured the front of the store. The others rounded up the employees in the rear and began to tie them up with tape. All the employees were forced to lie on the floor. The manager was forced at gunpoint to turn over the store receipts, his watch and six dollars. George Malcom, an employee, had a pistol taken from him at gunpoint. Before all the employees were tied up, Officer Frank Schlatt, answering a silent alarm, pulled his patrol car up in front of the building. He entered the front door and proceeded approximately fifteen feet down the center aisle where he was shot twice, once in the face and once in the chest. The chest shot glanced off a pocket lighter and lodged in a sofa. That bullet was recovered. The head wound was fatal. The robbers fled. Sometime later, appellant was arrested in Cobb County in connection with another armed robbery. He confessed to the Dixie Furniture Store robbery, but denied the shooting. Ballistics showed that Officer Schlatt had been shot by a .38 caliber Rossi revolver. The weapon was never recovered but it was shown that the appellant had stolen such a revolver in the robbery of a Red Dot grocery store two months earlier. Appellant admitted the shooting to a co-defendant and also to a jail inmate in the cell next to his, both of whom testified for the state.

### Enumerations of Error

1. In his first enumeration of error, appellant contends the death penalty violates the due process and equal protection provisions of the state and federal constitutions because prosecutorial discretion permits its discriminatory application. Appellant's argument is without merit. Gregg v. Georgia, 428 U. S. 153 (1976); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978), cert. den.,

— U.S. — (99 SC 268, — LE2d — ) (1978).

2. Appellant's second enumeration of error complains that the prosecutor conducted an illegal post-indictment lineup immediately prior to trial without the knowledge, consent, or presence of defense counsel. However, a review of the record does not support this contention. The record shows that four witnesses immediately prior to the call of the case saw the appellant and four other persons sitting in the jury box guarded by deputy sheriffs. Each of these witnesses testified that they recognized the appellant as one of the robbers at the time they saw him seated in the jury box. There is no indication that the witnesses were asked to view the men seated in the jury box and see if they recognized anyone. No one pointed out the appellant as the defendant in the case, rather it is apparent from the witnesses' testimony that each recognized the appellant from having viewed him at the scene of the respective robberies. Therefore, no illegal post-indictment lineup occurred. See *Prater v. State,* 148 Ga. App. 831 (253 SE2d 223) (1979).

Appellant argues further that the four witnesses viewing him in the jury box as he awaited trial along with police identification procedures impermissibly tainted the witnesses' in-court identification of the appellant.

The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was, need the court consider the second question: whether there was a substantial likelihood of irreparable misidentification. *Gravitt v. State,* 239 Ga. 709 (239 SE2d 149) (1977); *Heard v. State,* 149 Ga. App. 92 (253 SE2d 453) (1979).

The chance viewing of the appellant prior to trial as he sat with others was no more suggestive than seeing him in the hall as he and other defendants are being brought in for trial, or seeing him seated at the defense table as each witness comes in to testify. We conclude that the chance viewing of the appellant immediately prior to trial by four of the state's witnesses was not impermissibly suggestive. Also, we find the identifications were not tainted by police identification procedures. Nevertheless, we have inquired into and find the identifications reliable.

Classie Barnwell, an employee of the Dixie Furniture

Store testified that the appellant was the man who came in the front door and participated in the robbery. This witness had been exposed to photographic lineups on two occasions and had seen the appellant's picture in the paper. However, she testified that she did not recognize any pictures as being the robbery suspect. There is no evidence that the appellant's picture was in any of the photographic lineups. She testified further that although the newspaper picture looked familiar, it was "vague" and she could not recognize the appellant from it. She was able to identify the appellant in person and was certain of her in-court identification. There is no evidence that the photographic identification procedure used by the police with this witness was impermissibly suggestive. The newspaper picture may have been suggestive. However, the question is whether under the "totality of the circumstances" the witness was irrevocably committed to the desired identification by the identification procedure used. *Heyward v. State,* 236 Ga. 526 (224 SE2d 383) (1976). Here the victim based her in-court identification testimony upon her observation of the appellant for some five to ten minutes during the robbery. Her identification of the appellant had an independent basis other than the viewing of a newspaper photograph that only looked familiar to her. See *Burrell v. State,* 239 Ga. 792 (239 SE2d 11) (1977). In our opinion, her identification testimony was reliable and admissible.

David Ross viewed the appellant in a series of black and white photographs and another series of color photographs. He was able to identify the appellant from the color photographs but not from the black and white. There is no showing that the array of photographs exhibited to this witness was impermissibly suggestive. *Heyward v. State,* supra. This witness saw but did not recognize the picture of the appellant published in the newspaper. He was also one of four witnesses who saw the appellant in the jury box immediately prior to trial. He testified he recognized the appellant from having seen him as he walked past him immediately prior to the robbery of the Red Dot grocery store. His in-court identification of the appellant had an independent basis other than the photographs and was properly submitted to

the jury. See *Burrell v. State,* supra.

Two other witnesses made in-court identifications of the appellant after identifying him from a photographic lineup. However, each witness testified that the identifications were based on the presence of the appellant at the robbery scene. *Burrell v. State,* supra. Their testimony was properly submitted to the jury.

We note that other evidence also establishes the reliability of this identification testimony, particularly a co-defendant's testimony and the appellant's own statement. Appellant's related enumerations of error (e.g., the trial court's overruling of appellant's motion for new trial), are without merit.

3. In his third enumeration of error, appellant argues that the trial court erred in overruling his motion to suppress his statement because it was not given freely and voluntarily. We find no error in the trial court's determination that the confession was given freely and voluntarily. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Burney v. State,* 244 Ga. 33 (1979).

4. Appellant's fourth enumeration of error urges that the trial court erred in allowing evidence of appellant's oral statement admitting the murder made to an inmate in the next cell, because the prosecutor had deliberately withheld such statement in answering a Brady motion.

The appellant confided to a fellow inmate that he had shot the police officer. The inmate's name and address was included in the list of witnesses furnished to defense counsel. He testified for the state and was subjected to a thorough cross examination. *Hamby v. State,* 243 Ga. 339 (253 SE2d 759) (1979). The prosecutor showed the defense counsel his file, but did not furnish this witness' statement. The defendant in a criminal case has no right to inspect the prosecutor's file, but the district attorney upon proper motion may be required to disclose evidence that might be helpful to the defendant. *Strong v. State,* 232 Ga. 294 (206 SE2d 461) (1974) and cits. The test is whether the evidence was so important that the failure to disclose prevented the accused from receiving a constitutionally guaranteed fair trial. *Carter v. State,* 237 Ga. 617 (239

SE2d 411) (1976). Here, the evidence which was not disclosed prior to trial would not exculpate the appellant, nor would it lessen his criminal liability. The appellant has not shown material prejudice and was not denied a fair trial under Brady v. Maryland, 373 U. S. 83 (1963). The evidence he sought to inspect was introduced to the jury in its entirety, and a favorable inference, if any, could be drawn by the jury. *Tarpkin v. State,* 236 Ga. 67 (222 SE2d 364) (1976). Appellant's argument that the evidence was needed in order to prepare a proper defense or impeach other witnesses has no merit because the evidence requested was statements made by the appellant himself. *Tarpkin v. State,* supra.

5. In his fifth enumeration of error, the appellant complains that he was denied due process because the prosecutor deliberately failed to disclose impeaching evidence concerning the testimony of Mamie Thomas. Mamie Thomas was an employee of the Dixie Furniture Store and was present during the robbery. She testified at the appellant's commitment hearing that the appellant was not the perpetrator. After discussing her testimony with her employer and a detective she admitted her testimony at the commitment hearing was false and that she failed to identify the appellant at that time out of fear for her personal safety. At some time prior to the trial she elected to come forward and tell the truth. At trial, the prosecutor called this witness without informing the defense counsel that she would admit she perjured herself at the commitment hearing and that she would testify that the appellant was the perpetrator.

We point out that this is not an instance of the prosecutor failing to correct testimony knowing it to be false. See Napue v. Illinois, 360 U. S. 264 (1959). The prior impeaching statement was put before the jury on direct examination by the prosecutor and therefore any favorable evidence was made available to the jury. *Tarpkin v. State,* supra. Defense counsel knew of the prior impeaching statement and used it to impeach the witness during cross examination. See *Rini v. State,* 235 Ga. 60 (218 SE2d 811) (1975). Appellant has failed to show material prejudice and therefore his fifth enumeration of error is without merit.

6. Appellant argues in his last enumeration of error that the trial court erred in admitting evidence of appellant's prior criminal acts. We do not agree. The state introduced evidence that the defendant had participated in two prior armed robberies. At one of these robberies, the robbery of the Red Dot grocery, the appellant obtained a gun of the same caliber and make as that which killed Officer Schlatt. These crimes were committed within two months prior to the case under review. Positive identification of the appellant was made as to all the crimes. There was evidence showing similar circumstances common to all three crimes from which the jury could have determined that the appellant participated in a continuing scheme to commit multiple armed robberies in order to support himself. There was a logical connection between the crime being reviewed and the prior crimes. *Collins v. State,* 239 Ga. 45 (235 SE2d 523) (1977). The conditions of admissibility set forth in *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976) were satisfied. The trial court charged the jury as to the limited purpose for which these similar crimes were being admitted — that is to show the appellant's scheme, motive, intent or design — a purpose for which our decisions recognize an exception to the general rule against admissibility of evidence of other criminal activity. Code Ann. § 38-202; *Clemson v. State,* 239 Ga. 357 (236 SE2d 663) (1977); *Thomas v. State,* 239 Ga. 734 (238 SE2d 888) (1977); *Booker v. State,* 242 Ga. 773 (251 SE2d 518) (1979); *Burgess v. State,* 242 Ga. 889 (252 SE2d 391) (1979); *Hamilton v. State,* 239 Ga. 72 (235 SE2d 515) (1977).

## *Sentence Review*

The jury found the following aggravating circumstances and sentenced the appellant to death for murder.

1. The offense of murder was committed while the offender was engaged in the commission of another capital felony. Code Ann. § 27-2534.1 (b) (2).

2. The offense of murder was committed against any police officer, corrections employee or fireman while engaged in the performance of his official duties. Code Ann. § 27-2534.1 (b) (8).

As required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, the evidence concerning the crime, and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

We find that the evidence factually substantiates and supports the finding of the aggravating circumstances, the finding of guilt, and the sentence of death by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, — U.S. — (99 SC 2781, 61 LE2d 560) (1979).

Appellant's co-defendant, David Burney, was sentenced to life imprisonment while another co-defendant received a twenty-year sentence. (See Burney v. State, 244 Ga. 33 (1979)). The question is presented whether appellant's sentence is disproportionate considering the crime and the defendant in light of the lesser sentences imposed on the co-defendants.

There is not a simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser sentence. Collins v. State, 243 Ga. 291 (253 SE2d 729) (1979). Each case is evaluated on its unique factual circumstance.

We find distinctions between appellant's case and the cases of the other co-defendants. First, the appellant was the actual perpetrator of the murder, whereas the other co-defendants were not, and in fact were not even in the immediate area of the killing. Second, one defendant co-operated with the authorities and testified against his co-defendants. See Baker v. State, 243 Ga. 710 (257 SE2d 192) (1979). Juries under similar circumstances have sentenced the "triggerman" to death while the same penalty has not been imposed on co-defendants. These cases have been affirmed by this court. Bowden v. State, 239 Ga. 821 (238 SE2d 905) (1977); Pulliam v. State, 236 Ga. 460 (224 SE2d 8) (1976); Dobbs v. State, 236 Ga. 427 (224 SE2d 3) (1976); Ross v. State, 233 Ga. 361 (211 SE2d 356) (1974).

We find that appellant's sentence to death is not excessive or disproportionate to the penalty imposed in

the cases of his co-defendants.

We have thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the appendix support affirmance of the death penalty.

This was a murder of a police officer, committed while the appellant was engaged in an armed robbery. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. Nichols, C. J., Jordan, Hill, Bowles and Marshall, JJ., and Judge Charles L. Weltner, concur. Clarke, J., not participating.*

ARGUED NOVEMBER 19, 1979 — DECIDED JANUARY 24, 1980.

*John Milton Turner, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.

### APPENDIX.

*Johnson v. State,* 226 Ga. 378 (174 SE2d 902) (1970); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); 243 Ga. 120 (252 SE2d 609) (1979); *Willis v. State,* 243 Ga.

185 (253 SE2d 70) (1979); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Collier v. State*, 244 Ga. 553 (1979).