*Guerry R. Thornton,* for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.

## 65086. WILLIAMS v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant, Harvey Williams, appeals his conviction of rape. *Held:*

1. It is alleged the trial court erred "by allowing the State to secure a material amendment to the subject two (2) Count Indictment, by allowing the State to remove Count two [—] the recidivist charge, and erred in overruling Appellant's General Demurrer to said Indictment." The State properly indicted the defendant as a recidivist under Code Ann. § 27-2511 (Code § 27-2511; as amended through Ga. L. 1974, pp. 352, 355) by alleging three prior convictions of felonies — one for armed robbery, and two for kidnapping. However, the defendant objected to the recidivist count on the ground that the present charge of rape is a capital felony and Code Ann. § 27-2511 is not applicable to capital felonies. The state agreed and "abandoned" Count II of the indictment with the consent of the court.

Code Ann. § 27-2511 is, by its own terms, inapplicable to "a capital felony." *Clemmons v. State,* 233 Ga. 187 (210 SE2d 657). But, rape is no longer a capital felony. *Collins v. State,* 239 Ga. 400 (2) (236 SE2d 759). Pretermitting the question of whether an "abandonment" of the recidivist count, with consent of the court, is more similar to a nolle prosequi, or is a bar to further prosecution, that question is not now before us. See 42 CJS 890, Indictments & Information, § 34 (c). We need only decide if the striking of the recidivist count requires sustaining a general demurrer filed against the indictment. We find that it does not. "Where there are good and bad counts in an indictment, the court may strike the bad counts without quashing the whole indictment." *Martin v. State,* 10 Ga. App. 795 (1) (74 SE 304); *Sutton v. State,* 122 Ga. 158 (1) (50 SE 60); *Bennett v. Lowry,* 167 Ga. 347, 352 (2) (145 SE 505). Thus, where in a multi-count indictment, one or more counts are stricken, a general demurrer or motion to quash will not be sustained and the trial may

continue on the count or counts that are good. *Perry v. State,* 118 Ga. App. 22 (1) (162 SE2d 466). The trial court did not err in overruling the general demurrer to the indictment.

2. Defendant contends it was error to allow into evidence "identification testimony from a show-up procedure involving Appellant and improperly allowed such testimony contrary to Appellant's Fifth Amendment Constitutional rights." We do not agree. Counsel cites Stovall v. Denno, 388 U. S. 293 (87 SC 1967, 18 LE2d 1199) as authority for his claim of error in an inherently suggestive identification procedure used by the police, i.e., returning the defendant to the scene and asking a witness if he could identify him. One-on-one showups and confrontations, as opposed to conventional lineups, have been generally condemned. *Anthony v. State,* 160 Ga. App. 842, 844 (287 SE2d 686). However, occurrence of a one-on-one showup, without more, does not necessarily violate due process. Neil v. Biggers, 409 U. S. 188, 198 (93 SC 375, 34 LE2d 401). The primary evil to be avoided is the "substantial likelihood of irreparable misidentification." Coleman v. Alabama, 399 U. S. 1, 2 (90 SC 1999, 26 LE2d 387).

In the instant case the defendant admitted he was present in the apartment of the victim and testified that he had intercourse with the complainant with her consent. Further, he stated that on previous occasions — fourteen or fifteen times, he had intercourse with her in her apartment. Accordingly, as identification was not an issue any allegation of error as to identification procedures used is immaterial — because defendant has suffered no harm, and harm as well as error must be shown to warrant reversal.

3. Counsel for defendant charges that the trial court impermissibly allowed cross-examination by the prosecution, over objection, "into matters involving appellant's right to remain silent . . ." Counsel alleges that the prosecution "in a blatantly overbearing manner . . . improperly sought to use [defendant's] silence for the purposes of impeachment" — citing North Carolina v. Butler, 441 U. S. 369 (99 SC 1755, 60 LE2d 286). Butler offers no support for counsel's assertion of error. Butler dealt solely with a ruling of the North Carolina Supreme Court that waiver of a Miranda right would not be sanctioned except when explicitly waived by a defendant. The U. S. Supreme Court reversed holding that an explicit waiver is not necessary to support a finding of a waiver by defendant of the right to counsel.

In the case at the bar, the victim fled from her apartment immediately after the person who assaulted her had left. The victim was hysterical, according to the man with whom she sought refuge, and he had another person call the police. The victim's description of

her attacker caused police to arrest the defendant within 3 blocks of the victim's apartment. One of the officers testified that defendant was given the Miranda rights warning and transported back to the victim's apartment building where he was identified by a person who had seen him leaving the building. In response to police questions concerning his whereabouts before his arrest — defendant told the police, after being advised of his Miranda rights, he had been to a "clinic" earlier that day. He testified before the court that he went to the clinic "to get medicine for tuberculosis." The prosecutor asked him if he was receiving "any shots there also?" He stated: "No." Then the prosecutor asked if he told anyone else he had gone to the clinic for any other reason. Defendant then admitted he told the officers after they arrested him that he had been to the clinic "to get shots for VD." The defendant said he first noticed he had VD around March 24th. This offense occurred March 31st. Defendant testified that he accused the victim of giving him VD and "she gets hysterical 'bout that and holler about her baby." [The victim was seven months pregnant at the time of this incident.] The defendant admitted that the police had asked him for his whereabouts after he left home that day until the time he was arrested but he did not tell them he had been to the victim's apartment — because he had wanted his lawyer present. He also admitted that he did not tell them he had sex with the victim with her consent — because he wanted his lawyer present. Up to this point, counsel had not objected. Counsel then objected on the ground that the prosecution did not "have a right to comment on his [the defendant's] silence as to a specific defense . . ." The court agreed and defense counsel moved for a mistrial. The court overruled it without cautioning the jury or rebuking the prosecutor. See *Hall v. State,* 138 Ga. App. 20, 21 (225 SE2d 705); *Smith v. State,* 244 Ga. 814, 815 (262 SE2d 116).

The U. S. Supreme Court, in Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) found that a defendant's silence, following Miranda warnings, cannot be used against him. However, in Jenkins v. Anderson, 447 U. S. 231 (100 SC 2124, 65 LE2d 86), the Supreme Court held that "[w]hile the Fifth Amendment prevents the prosecution from commenting on the silence of a defendant who asserts the right to remain silent during his criminal trial, it is not violated when a defendant who testifies in his own defense is impeached with his prior silence. [Hn. 1] . . . Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted . . . In this case, in which no governmental action induced petitioner to remain silent before arrest, *Doyle v. Ohio,* 426 U. S. 610, is inapplicable." Hn. 2. Thereafter, in Anderson v.

Charles, 447 U. S. 404 (100 SC 2180, 65 LE2d 222), the Supreme Court explained that *"Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances [that his silence will not be used against him]. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." 447 U. S. at 408.

Hence, as in the instant case, after receiving Miranda warnings the defendant did not remain silent but gave his version of events to the police. After voluntarily taking the stand at trial he was subject to impeachment as any other witness. Code Ann. § 38-415 (Code § 38-415, as amended through Ga. L. 1973, pp. 292, 294). We find no error in cross-examining a defendant who takes the witness stand in his defense about the inconsistencies of the version he gave to the jury and the version he gave to the officer after being advised of his Miranda rights at the time of his arrest. See *Bridges v. State,* 242 Ga. 251 (10) (248 SE2d 647).

*Judgment affirmed. Shulman, C. J., and Carley, J., concur.*

DECIDED JANUARY 7, 1983.

*Guerry R. Thornton,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.