## 35537. WASHINGTON v. THE STATE.

HILL, Justice.
Defendant was tried and convicted of malice murder and three counts of aggravated assault. After the jury was unable to reach a decision on the imposition of the death penalty, the trial court sentenced the defendant to life imprisonment for the murder and 10 years consecutively for each of three counts of aggravated assault.

At the trial, the jury was authorized to find the following: Defendant purchased a shotgun from a Savannah sporting goods store on the morning of March 20, 1976.[1] Later that morning the Chatham County police received a telephone call reporting that someone was discharging a firearm behind the defendant's house. The first patrolman to respond to the call observed the

---

[1] Appellant's brief was filed in this court on October 10, 1979.

defendant in front of the house yelling obscenities from behind a parked car. As a second officer drove up, the first police officer got out of his vehicle. The defendant then ran to his front porch, yelling that he intended to get his gun and blow the policeman's brains out. The two uniformed officers approached the defendant and his mother, who was standing on the porch. Defendant's mother began hollering that she would take care of the matter, that her son was sick and had just been released from the hospital. One of the officers climbed onto the porch and the defendant got behind his mother. The officer informed them both that he had come to their address to investigate a report of someone shooting a shotgun. Defendant again threatened to kill the police if they did not leave.

A third and fourth policeman arrived, and defendant and his mother then went inside the house and closed the door. One of the officers called for a supervisor. Defendant's mother came and stood in the doorway. Defendant pushed out a window screen and continued yelling and threatening to beat and shoot the police. In an effort to get the defendant out of the house, two of the officers offered to remove their gunbelts and fight the defendant in single-handed combat. When the police supervisor arrived, the defendant withdrew from the window. Upon being advised as to the situation, the supervisor ordered the police to go into the house and arrest the defendant.

At first the defendant could not be found. When one of the officers started to climb from a chair into a hole in the ceiling of a closet, another officer yelled a warning as a shotgun blast from the attic wounded the two policemen. A second blast struck and killed Officer Alex Hodgson, who had been standing outside the open back door. A gun battle and seige ensued, ending when defendant surrendered after tear gas had been fired into the attic of the house. En route to jail the defendant boasted that he had shot the deceased and that he had purchased the shotgun with the intention of killing a policeman. While being fingerprinted defendant said that he would not have to play crazy this time because the shooting was legal. Defendant's defense of insanity at the time of the offense was rejected by the jury when he was found guilty.

1. Defendant enumerates error in the trial court's failure to charge the jury on self-defense and involuntary manslaughter. Defendant emphasizes that the officers did not advise him that he was under arrest; he argues that the officers had challenged him to fight; he points out that the officers did not see him with a gun; and he urges that the officers were not authorized to force their way into his house at gunpoint without a warrant where they were summoned to investigate an ordinance violation (discharging a firearm in a residential area) and witnessed no more than a misdemeanor (threatening the life of a police officer).

Where police officers investigating a shooting incident locate the person suspected of the shooting and the suspect threatens to kill the officers, the suspect cannot withdraw into his house, shoot and kill one of the officers who enters thereafter and then claim self-defense. This is all the more so where the deceased officer did not enter the house. A person is justified in using deadly force in self-defense only if he reasonably believes such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony. Code Ann. § 26-902 (a). A trespass amounts only to a misdemeanor and does not justify killing the trespasser. *Norrell v. State,* 116 Ga. App. 479, 485 (157 SE2d 784) (1967). A person is justified in using deadly force in defense of habitation only if the entry into his habitation is made or attempted in a violent and tumultuous manner and he reasonably believes the entry is being made for the purpose of assaulting or offering personal violence to a person therein, or to commit a felony therein, and such force is necessary to prevent the assault, personal violence or felony. Code Ann. § 26-903.

An arrest may be made by an officer without a warrant if the offense, be it a felony or misdemeanor or violation of a municipal ordinance, is committed in his presence. Code Ann. § 27-207 (a). Moreover, the mere fact that an arrest by an officer may be unlawful, without more, does not authorize the killing of the arresting officer. *Norton v. State,* 137 Ga. 842 (3) (74 SE 759) (1912). The case of *Davis v. State,* 79 Ga. 767 (4 SE 318) (1887), is not applicable here because there the defendant did not

know that the person making the arrest was a law enforcement officer.

The trial court did not err in refusing to charge on self-defense. Nor did the court err in failing to charge on involuntary manslaughter. *Braxton v. State,* 240 Ga. 10, 14 (239 SE2d 339) (1977); *Crawford v. State,* 245 Ga. 89 (3) (1980).

2. Defendant enumerates as error the denial of his motion for a mistrial after the prosecutor in his closing argument asked the jury not to send the defendant back home, saying: "Enough people have died." Defendant argues that this statement placed his character in issue by inferring that defendant had killed someone prior to the murder for which he was on trial. The state argues that the reference was to the death of Officer Hodgson. After examining the remark in the context of the prosecutor's argument, we find no clear reference to any prior offense and hence the trial judge did not abuse his discretion in denying the motion for mistrial. *Manchester v. State,* 171 Ga. 121 (7) (155 SE 11) (1930).

3. Defendant enumerates as error that the court permitted a psychiatrist to testify concerning the problems of insane persons being allowed early release from Central State Hospital and the inadequacy of Georgia law in keeping insane defendants confined. The name of the witness is not given in the enumeration of error or brief in support of this enumeration, the testimony referred to is not quoted, cited or otherwise identified, and the objection of defense counsel, if any, is not referred to or cited.

Instead, excerpts from the prosecutor's closing argument are quoted and Code Ann. § 27-2206, relating to release by the Pardons and Paroles Board, is cited. The trial court instructed the jury that if the jury found the defendant not guilty by reason of insanity, they should so specify in their verdict, and that they were not to consider what possible disposition may be made of the defendant by the authorities of a mental institution. We find no reversible error. *Watkins v. State,* 237 Ga. 678, 682-683 (229 SE2d 465) (1976); *Pryor v. State,* 238 Ga. 698 (7) (234 SE2d 918) (1977).

4. Defendant's final enumeration of error has been

expressly withdrawn.

*Judgment affirmed. All the Justices concur.*

SUBMITTED OCTOBER 12, 1979 — DECIDED JANUARY 24, 1980.

*Reginald C. Haupt, Jr.,* for appellant.

*Andrew J. Ryan, III, District Attorney, Robert M. Hitch, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.