## 38070. HARRELL v. THE STATE.

HILL, Presiding Justice.

Joseph L. Harrell was convicted by a jury of the murder of 15-year-old Catherine C. Crowe and sentenced to life imprisonment.[1]

The evidence presented at the trial showed that Catherine was the defendant's girl friend, but that she wanted to break up with him and go back to a former boyfriend. On the afternoon of May 5, 1980, the defendant, wearing a gun, was looking for Catherine. When he found her at Joe's Tavern he shook her and yelled that he was "going to beat the hell out of her." About 6:30 p.m., he led her outside.

Between 7 and 8 p.m., the defendant entered Azar's Liquor Store and asked the cashier to call the police. The defendant said he had been in a fight with his girl friend and he thought he might have hurt her; the cashier observed that the defendant's clothing was covered with blood. The defendant left before the police arrived.

Virginia Henderson and her brother saw the defendant just outside a Waffle House on Sylvan Road at about 8 p.m. He told them that he had shot his girl friend, saying that "the bitch was screwing around" and that "she wasn't going to get by with it."

Sometime around 8 p.m. the defendant called Ruth Dobbs, a woman who had known Catherine Crowe since she was a baby and who considered her part of her family, and asked her to call the police because he thought he had hurt Catherine bad; in another call he made that evening to the Dobbs' home, the defendant told Ruth Dobbs' daughter that "she could be dying up there in the woods because I may have killed her." Ruth Dobbs' husband and daughter went out to look for Catherine; they found her body in the woods behind Azar's Liquor Store. Police officers went to the crime scene and to the defendant's home. After they left, his mother called a friend's home and spoke with the friend's son-in-law, telling him the police had been at her home looking for the defendant. The friend and her son-in-law came to the house, arriving sometime after 10 p.m. The son-in-law noticed that a hose had been left on and that the basement door was open. He turned off the hose and went into the basement where he found blood-covered jeans and a shirt under a sleeping bag. He then drove around looking for the defendant; when he found him the defendant admitted shooting and beating Catherine. Later the defendant talked to his mother on the phone

---

[1] Although the state sought the death penalty, the jury recommended life imprisonment. A prior trial had resulted in a mistrial when the jury was unable to agree on a verdict in the guilt-innocence phase.

and returned home, where he was arrested. After being given his Miranda warning he admitted to his mother in the presence of a police officer that he had shot Cathy Crowe.

The medical examiner who performed the autopsy on the victim testified that she sustained multiple blunt force injuries to the forehead; laceration and bruising of the hands; fractured facial bones; neck bruises; fractured bones above the larynx; hemorrhaging of the eyes; and three contact gunshot wounds to the ear, front right chest, and back right chest. The cause of death was asphyxiation due to strangulation and blunt force injuries; the gunshot wounds were contributing factors. The bloodstains on the defendant's clothing were consistent with a blood sample taken from the victim.

The defense at trial was not that he did not commit the homicide but that he lacked the requisite malice.

1. The defendant first enumerates as error the trial court's failure to recharge the jury upon request. The jury, via the bailiff, requested recharge on "reasonable doubt, reasonable interval" and "serious provocation re involuntary manslaughter."

The trial court has a duty, upon request by the jury, to recharge them. *Edwards v. State,* 233 Ga. 625 (2) (212 SE2d 802) (1975). However, in this case, although the transcript does not show the time interval, the trial judge stated on the record that before he could prepare to recharge the jury and re-enter the courtroom, the jury signaled it had reached a verdict. The defendant agrees that the jury signaled they had reached a verdict before the judge could prepare his recharge and re-enter the courtroom.

We find that this case is distinct from *Edwards v. State,* supra, where the record showed that the trial court had *refused* to reinstruct the jury per their request, although the issue was not raised until the jury had reached a verdict. In *Whitfield v. State,* 143 Ga. App. 779 (1) (240 SE2d 189) (1977), the Court of Appeals applied *Edwards* to facts somewhat similar to those here. There the jury asked for a recharge at 2:05 but reached a verdict at 2:30. The trial judge in *Whitfield* was conducting voir dire with another jury and did not interrupt that proceeding. Thus Whitfield's jury was left for 25 minutes with nothing to do except deliberate without answers to its request for recharge. We do not find that *Edwards* or *Whitfield* require reversal here. We find that where, after requesting a recharge, the jury returns a verdict before the trial judge has time to recharge, the trial judge's failure to recharge before the verdict is reached does not require reversal. The return of the verdict under these circumstances shows that the jury was able to reach a verdict without being recharged.

2. The defendant's second enumeration of error is that he was found guilty by a conviction-prone jury and was deprived of the right

to a representative cross section of the community, and of his right to equal protection and due process, by the exclusion, pursuant to Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), of jurors who expressed conscientious opposition to the death penalty. This argument has been rejected by the United States Supreme Court, Lockett v. Ohio, 438 U. S. 586, 595-97 (98 SC 2954, 57 LE2d 973) (1978), and by this court, *Smith v. Hopper,* 240 Ga. 93 (1) (239 SE2d 510), cert. denied, 436 U. S. 950 (1977).

3. Defendant next asserts that he "was denied his rights to remain silent and to assistance of counsel by testimony by a state's witness that appellant had exercised his right to remain silent and had refused to waive his right to counsel. . . ."

A police officer testified that he arrested the defendant at his home and read him the Miranda warning, and that the defendant then told his mother he pointed the gun at the victim to frighten her and it discharged. The defendant was then escorted from the house. The officer was asked:

"Q. Okay. And did you tell him anything at that point?

"A. No, not after he was put in the car. I told him that I was not the primary investigator on the case and that I would not question him in any way, and I did not during the entire course of the morning.

"Q. Now, did anything happen while you were on the way downtown?

"A. Yes. After we had gotten almost to the police department, while the other detectives and I were talking to one another, Joey stated that the gun that he used was a .32-caliber and that he had thrown the gun into the woods near the crime scene, and if we would take him back during the daytime, he thought that he could find it. We went on to the Police Department where I took Mr. Harrell to the police station, to the homicide office. I read the waiver of counsel to him. He stated that he had read it and he refused to sign. He was then taken down to the jail." Defendant argues the trial court erred in denying his motion for mistrial relying on Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976), and *Howard v. State,* 237 Ga. 471 (228 SE2d 860) (1976). However, when the motion for mistrial was overruled, defense counsel requested that no curative instructions be given. We believe counsel's decision was tactically wise yet indicative of the fact that the testimony was innocuous.

We do not find that this statement violates Doyle or *Howard.* Both of those cases focus on denial of the defendant's right to remain silent. Here the officer's testimony made it clear that the officer did not question the defendant and the officer's testimony did not suggest that the defendant asserted his right to remain silent. Rather he declined to waive counsel. Under the circumstances of this case,

where the evidence shows that the defendant admitted causing the injuries which resulted in the victim's death, the admission of unemphasized testimony that during the booking process he declined to waive counsel is, if error at all, harmless beyond a reasonable doubt. Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

4. Appellant's fourth enumeration of error is that he "was denied his right to confrontation, a fair and impartial jury and due process of law . . . by the refusal of the prosecutor to remove fraternal and religious emblems from his lapel during appellant's trial and by the overruling of appellant's motion for mistrial by the trial court." He argues that failure to bar such insignia will result in unscrupulous counsel attempting to influence the jury by first determining which religious and fraternal organizations key jurors belong to and then wearing their insignia. He makes no showing that any juror was a member of such an organization, or that the prosecutor wore the insignia to influence the jury or that it did in fact influence the jury. Nor does he cite any cases as authority. We find no error in this enumeration.

5. Defendant's fifth enumeration of error is that the trial court erred in giving the following charge: "Now, Ladies and Gentlemen, if you find the Defendant not guilty of murder or if you have reasonable doubt as to his guilt of the crime charged in the indictment, murder, then you have a right to go ahead and consider a lesser included crime referred to as voluntary manslaughter." Defendant contends this charge is coercive and burden-shifting. This contention has been found to be without merit. *Lamar v. State,* 243 Ga. 401 (3) (254 SE2d 353) (1979); *Alexander v. State,* 247 Ga. 780 (3) (279 SE2d 691) (1981).

6. Defendant's final enumeration of error is that he was denied his right to due process and his right under Code Ann. § 38-201 to have only relevant evidence admitted when the trial court allowed a psychiatrist to testify as to his sanity over his objection. Defendant contended the testimony would be irrelevant because he did not rely on insanity as a defense.

The psychiatrist who testified for the state examined the defendant because he had filed a special plea of insanity. In response to a motion by defendant, the court provided him with $750 to obtain an examination by an independent psychiatrist. By resubmitting all the charges he had requested at his prior trial, the defendant submitted several requests to charge relating to sanity prior to the psychiatrist's testimony; he withdrew them at the close of the evidence.

We find no error in the admission of the psychiatrist's tes-

timony. The question of the defendant's sanity at the time of the commission of the crime is relevant. The state may offer relevant evidence on issues as to which it does not have the burden of proof. Evidence which is relevant need not be excluded because the defendant concedes the point the state is trying to prove. *Franklin v. State,* 245 Ga. 141 (3) (263 SE2d 666), cert. denied, 447 U. S. 930 (1980). Finally, testimony that the defendant was sane could not have been harmful or prejudicial so as to warrant reversal.

The defendant also suggests that his fifth amendment rights were violated by the psychiatrist's testimony because he was not advised that he had the right to remain silent during the psychiatric examination. See Estelle v. Smith, 49 USLW 4490 (68 LE2d 359) (1981). Since, on direct examination by the state, the psychiatrist limited his testimony to the defendant's mental state and did not disclose any admission that the defendant may have made, this argument is without merit. *Presnell v. State,* 241 Ga. 49 (7) (243 SE2d 496) (1978); reversed in part on other grounds, Presnell v. Georgia, 439 U. S. 14 (99 SC 235, 58 LE2d 207) (1978).

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED FEBRUARY 17, 1982.

*August F. Siemon,* for appellant.

*Lewis R. Slaton, District Attorney, Russell J. Parker, Margaret V. Lines, Assistant District Attorneys, Michael J. Bowers, Attorney General, Charles E. Brown, Staff Assistant Attorney General,* for appellee.