38423. HILL v. THE STATE.

SMITH, Justice.

Appellant, Floyd Ernest Hill, was convicted for the malice murder of Austell police officer Greg Mullinax and for the felony murder of Darryl Toles. Appellant was sentenced to death for the murder of Mullinax and received a life sentence for the murder of

Toles. He raises in his appeal thirteen enumerations of error. We affirm the conviction and the sentence of death for the murder of Mullinax but reverse the conviction for the murder of Toles.

On the evening of February 8, 1981, Virginia Barber and Edward "Tweet" Saffo, who lived together in a trailer behind appellant's residence off Paper Mill Road in Austell, began to argue. Saffo twice fired a .32 caliber pistol and then left, to cool off, he claimed.[1] Ms. Barber went inside her trailer to call the police, then grabbed a pair of scissors and set out after Saffo.

Appellant, meanwhile, was sitting in his automobile in his driveway, drinking and listening to tapes with his friend Wayne Lockett. Janice Miller, sister of the victim Darryl Toles, approached appellant and asked for his help. Appellant declined, saying he was too drunk to intervene. After Ms. Miller left, however, appellant asked one of his daughters to go into his house and get his gun.

Virginia Barber caught up to Saffo just as he reached Paper Mill Road and just as Officers Greg Thames and Greg Mullinax of the Austell Police Department arrived. Saffo, at this time, was relatively calm, but Ms. Barber was cursing and lunging at Saffo. When Officer Thames attempted to subdue and disarm her, she told him, "Turn me loose. I'm not the one you are supposed to be getting." By this time, several of Ms. Barber's children had arrived including a 15-year-old son armed with a butcher knife. As the officers were placing Ms. Barber into the police car, her son attacked the officers. When they responded to this new threat, Ms. Barber exited the police vehicle and rejoined the fight. Then Saffo hit one of the officers and told them to leave his wife alone.

Into the melee arrived appellant, who had driven up and parked immediately behind the police vehicle. Appellant got out and walked towards the action. Officer Thames hollered, asking appellant to help clear the young children out of the area before someone got hurt. Appellant failed to respond. Officer Mullinax then yelled, "Floyd, get out of here." As Officer Thames was standing by the left rear door of the police car struggling with Janice Miller, he heard a shot and then a series of shots that "sounded like a string of firecrakers." Everyone scattered. Officer Thames saw Mullinax stagger and fall. Thames radioed for help, picked up Mullinax's shotgun and covered him until help arrived. After the shooting, Thames saw Darryl Toles for the first time, lying in the street.

When the investigators arrived, they followed a trail of blood

---

[1] Saffo testified that he only fired the gun into the ground because he was on probation and did not want to walk off carrying a loaded gun.

which led into and out of appellant's house, back to the Saffo trailer and into the woods behind the trailer. There they found appellant, armed with a .32 caliber pistol and suffering from several gunshot wounds. Two days later, a .38 caliber pistol was discovered next to a tree between the Hill and Saffo residences. The pistol contained three empty cartridge cases and one misfired round. It was later determined that all three bullets which struck Officer Mullinax had been fired from this pistol.

One of Mullinax's wounds was fatal. Darryl Toles also died. The two bullets removed from Toles had been fired from Officer Mullinax's revolver.

Appellant testified that he had come down to help out and was caught in the crossfire between Officer Mullinax and someone to his rear. He claimed that he had, in fact, been struck at least once from the rear. Afterwards he wandered off, dazed and confused, retrieved a .32 caliber pistol from his residence for protection, and stumbled past Saffo's trailer and into the woods. Appellant claimed not to have had a weapon while down at the road where the shooting took place.

Medical testimony offered in rebuttal, however, established that all of appellant's entry wounds were frontal. Moreover, the testimony of the other witnesses was unanimous that Darryl Toles had no weapon and that only appellant and Officer Mullinax were involved in the shooting. Several witnesses recognized the pistol that appellant used as a .38 that they had seen before in appellant's possession. All who were in a position to see who shot first agreed that appellant did.

1. Appellant's first three enumerations of error are the general grounds.

(a) The evidence, viewed in the light most favorable to the prosecution, is more than sufficient to convince a rational fact finder beyond a reasonable doubt that appellant is guilty of the murder of officer Greg Mullinax. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Appellant's conviction for the murder of Darryl Toles must, however, be set aside.

Count two of the indictment charged that appellant, "while in the commission of a felony, to wit: murder, cause[d] the death of Darryl Toles . . . by shooting at Greg Mullinax, a police officer, and when said Greg Mullinax returned gunfire towards [appellant] said Darryl Toles was inadvertently struck and killed."

Count two is predicated upon a killing committed by one resisting a felony. Our felony murder statute provides: "A person . . . commits the crime of murder when in the commission of a felony he causes the death of another . . . irrespective of malice." Code Ann. §

26-1101 (b). In a case of first impression, this court unanimously concluded that our felony murder statute as it is presently written does not penalize the killing of one of the parties to the underlying felony by the intended victim of the underlying felony. *State v. Crane,* 247 Ga. 779 (279 SE2d 695) (1981).

In the instant case, the victim of the alleged felony murder was not one of the parties to the underlying felony, but was an innocent bystander. The result, however, must be the same. As we said in *State v. Crane,* supra, "The key words of the statute are 'he causes.' These words can be read either to include or to exclude the homicide in the present case. One construction would be that the words 'he causes' require the death to be caused *directly* by one of the parties to the underlying felony. Another construction would be to include also those deaths indirectly caused by one of the parties . . ." Although we favored the latter construction we felt obliged to adopt the former.[2] Applying the former construction to this case, it is clear that appellant did not directly cause the death of Darryl Toles and may not be convicted therefor.[3] If this result be viewed as a defect in our felony murder statute, the remedy lies with the legislature.

2. In his ninth enumeration of error, appellant contends the trial court erred in charging Code Ann. § 26-801 (b), defining parties to a crime. Appellant argues that there was evidence presented to support his theory that Toles was not an innocent bystander but was a party to the crime. Since the jury's verdict does not specify whether it found Toles to have been an innocent bystander as alleged, it is possible, appellant argues, that because of the court's charge on parties to a crime, the jury found Toles to be a co-felon, in which event *State v. Crane,* supra, would bar his conviction for the murder of Toles.

Since we have already set aside appellant's conviction for the

---

[2] See also Annot. 56 ALR3d, 239, 242: "In considering the applicability of the felony-murder rule where the killing is committed by someone resisting the felony, numerous courts have adopted the view that for a defendant to be held guilty of murder, it is necessary that the act of killing be that of the defendant and for the act to be his, it is necessary that it be committed by him or by someone acting in concert with him."

[3] Code Ann. § 26-801 provides that under certain circumstances, one may be held responsible for a crime one did not directly commit. A review of that Code section shows none of the circumstances to be applicable here. The closest, perhaps, is § 26-801 (b)(2) which allows a finding of criminal liability where one " *intentionally* causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity." (Emphasis supplied.) There is, however, in this case no allegation or evidence that appellant intentionally caused Officer Mullinax to shoot Darryl Toles.

murder of Toles, we need not further consider this enumeration of error.

3. In his fourth enumeration of error, appellant claims the trial court erred in failing to excuse for cause a juror who was a retired supervisor of industries at the Atlanta Federal Penitentiary.

The juror stated that he could listen to the evidence and make an impartial decision based thereon. Appellant offers no reason other than the juror's former employment for his claim that the juror should have been excused. However, a supervisor of industries at a federal penitentiary is not a police officer who must be excused when challenged for cause in a criminal case. Moreover, the juror here was no longer so employed at the time of the trial. *Hutcheson v. State,* 246 Ga. 13 (268 SE2d 643) (1980), is therefore inapplicable and there is no merit to this enumeration of error. See *Depree v. State,* 246 Ga. 240 (2) (271 SE2d 155) (1980), and *Jordan v. State,* 247 Ga. 328, 340 (fn. 16) (276 SE2d 224) (1981).

4. In his fifth, sixth, seventh and eighth enumerations of error, appellant complains of the court's failure to grant a mistrial and later, a new trial, based upon improper references to appellant's exercise of his right to remain silent after being given Miranda warnings.

Before the trial began, appellant filed a motion in limine, asking that the state be precluded from introducing evidence of an "alleged statement by defendant requesting assistance of counsel prior to giving any statements to investigating officers."

At the hearing on the motion, appellant's contentions and the court's response were as follows:

Mr. Johnson (for appellant): ". . . Now, my motion goes to this. I am attempting to prevent the police officer from testifying, 'Well, we arrested Floyd and right off the bat he said, I don't want to talk to anybody until I see my lawyer.' That type of statement in and of itself, rather than the fact that he made no statement, He gave us no statement—"

The Court: ". . . Usually it is handled this way . . . the state just simply says, 'did the defendant so and so give you a statement?' 'No, Sir.' That's it. I think that they can go that far."

Mr. Johnson: "*That's fine*" (Emphasis supplied.)

In the court's written order on the motion in limine, the state was ordered not to introduce evidence of any statement by appellant "to the effect that 'I won't say anything until I talk to my lawyer.' "

During the opening statements, appellant's attorney indicated the evidence would show that appellant had departed the scene of the shooting because he was confused and disoriented and did not know what had happened. Thereafter, during the state's case, the prosecutor elicited testimony that after finding appellant in the

woods, the chief investigating officer had advised appellant of his various Miranda rights. Then the following transpired:

Q. (by the D. A.) "Now basically, what type of conversation did you have with [appellant] at that point?"

A. "Well, naturally I asked him what had happened."

Q. "What was his response?"

A. "His response was nil. He did not give a response."

At this point, the court, on its own motion, instructed the jury that a defendant has the right to remain silent and that no unfavorable inference should be drawn from the exercise of that right. The questioning continued:

Q. "Sergeant Seay, did you have a conversation with [appellant] while you were waiting for the ambulance, *not concerning any crime scene or investigation that you were conducting*?" (Emphasis supplied.)

A. "Yes sir. I asked him if he was in great pain, and he said yes, his arm hurt, and I told him that the ambulance would be there in a little bit and would take him and get him treated, and he asked for a cigarette, which I found him a cigarette and gave it to him, and at that time he stated that he wanted his lawyer."

Appellant objected and moved for a mistrial. The court did not rule on the objection, but denied the motion for mistrial and gave lengthy curative instructions.[4]

Later, during the state's cross-examination of appellant, the prosecutor asked, "Did you ever try to explain all of this to anybody before today?" Appellant's objection was immediately sustained.

(a) In Griffin v. California, 380 U. S. 609 (85 SC 1229, 14 LE2d 106) (1965), the U. S. Supreme Court held that state prosecutors and judges may not comment on a defendant's failure to testify. Shortly thereafter, the court announced that the prosecution may not use at trial the fact that the defendant stood mute or claimed his Fifth Amendment privilege during police custodial interrogation. Miranda v. Arizona, 384 U. S. 456, 468 n. 37 (86 SC 1602, 16 LE2d 694) (1966). After Miranda, some courts, while barring the use of a defendant's prior silence during the prosecution's case in chief, allowed its use for impeachment purposes. See United States v. Hale, 422 U. S. 171, 175 n. 2 (95 SC 2133, 45 LE2d 99) (1975). However, in Doyle v. Ohio, 426

---

[4] These included, in part: ". . . You don't have to make any statement at all until you talk to your lawyer. It is a pretty good idea, to tell you the truth. That's what I would do, so there is no unfavorable inference to be drawn from that, and I don't think anybody was trying to create an unfavorable inference . . . Do Y'all understand that? If so shake your head in the affirmative." The record shows that all 12 jurors nodded affirmatively.

U. S. 610 (96 SC 2240, 49 LE2d 91) (1976), the Supreme Court held that since Miranda warnings at least implicitly inform a person that his decision to remain silent cannot be used against him, the use for impeachment purposes of a defendant's silence, at the time of his arrest and after receiving his Miranda warnings, violates the due process clause of the Fourteenth Amendment.[5] Improper reference to a defendant's silence, however, does not automatically require reversal. See *DeBerry v. State,* 241 Ga. 204 (243 SE2d 864) (1978), and *Smith v. State,* 244 Ga. 814 (262 SE2d 116) (1979). Assuming that a defendant has preserved the point by proper objection, the error may be harmless beyond a reasonable doubt. *Harrell v. State,* 249 Ga. 48 (5) (288 SE2d 192) (1982); see also, Stone v. Estelle, 556 F2d 1242, 1246 (5th Cir. 1977). The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt. Sullivan v. Alabama, 666 F2d 478, 485 (11th Cir. 1982).

(b) There are a number of factors in this case which, taken together, lead us to conclude that the references to appellant's pre-trial silence were harmless beyond a reasonable doubt.

First, it is doubtful that appellant preserved for appellate review any objections to the first reference to his silence, in view of defense counsel's agreement with the court during the hearing on the motion in limine that mere reference to his silence would not be improper. See *Harley-Davidson Motor Co. v. Daniel,* 244 Ga. 284, 285-6 (260 SE2d 20) (1979); *Gober v. State,* 247 Ga. 652 (2) (278 SE2d 386) (1981). At least, the motion in limine is relevant to a consideration of the misconduct of the prosecutor. That is, although the prosecutor deliberately elicited the testimony that appellant made no response after having been informed of his Miranda rights, the prosecutor could reasonably have assumed that appellant had no objection to such testimony.

The second reference, to appellant's request for an attorney, was an unsolicited, spontaneous comment by the witness following a question that the prosecutor had limited to a conversation "not concerning any crime scene or investigation that you were conducting." See, United States v. Smith, 635 F2d 411, 413 (5th Cir.

---

[5] Not all use of a pre-trial silence for impeachment purposes is barred. See Doyle, supra, n. 11 (use of fact of silence to rebut claim by defendant that he had previously related the same exculpatory story offered at trial); Jenkins v. Anderson, 447 U. S. 231 (100 SC 2124, 65 LE2d 86) (1980) (use of pre-arrest silence); Fletcher v. Weir, —— U. S. —— (102 SC 1309, 71 LE2d 490) (1982) (use of post-arrest silence where no Miranda warnings given).

1981).[6]

The third reference came much later in the trial and was an unanswered question, the objection to which was immediately sustained, with curative instructions. See *Smith v. State,* supra.

Although more than one reference was made to appellant's pre-trial silence during the presentation of the evidence, under the circumstances of this case we do not find repeated deliberate violations of Miranda v. Arizona, supra, or Doyle v. Ohio, supra. See, United States v. Espinosa-Cerpa, 630 F2d 328, 334 (5th Cir. 1980). Moreover, the prosecutor made no reference to and did not attempt to capitalize on appellant's pre-trial silence during closing arguments. See, United States v. Dixon, 593 F2d 626, 630 (5th Cir. 1979).

The evidence in this case, if not overwhelming, was quite strong. See United States v. Smith, supra. In view of all the foregoing, we conclude that the curative instructions given were sufficient to render the error harmless beyond a reasonable doubt. See, United States v. Kaplan, 576 F2d 598 (5th Cir. 1978); United States v. Fairchild, 505 F2d 1378 (5th Cir. 1975).

5. The trial court did not err in refusing to give appellant's request to charge on reasonable doubt. "The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principles, is not grounds for reversal." *Kelly v. State,* 241 Ga. 190 (4) (243 SE2d 857) (1978). Appellant's tenth enumeration of error is without merit.

6. In his eleventh enumeration of error, appellant contends the court erred in allowing the state to offer proof of a prior felony conviction during the sentencing phase of his trial, because notice required by Code Ann. § 27-2503 was not furnished until the day of the trial.

Code Ann. § 27-2503 (a) states that "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." Here, the notice *was* provided prior to trial. See *Cobb v. State,* 244 Ga. 344 (20 (a)) (260 SE2d 60) (1979). Appellant does not contend that the conviction was not his, that he was not represented by counsel, or that the conviction was

---

[6] We note also that the prosecutor was apparently attempting to show that appellant was not as confused and disoriented as he claimed to be. However, appellant had not yet testified at the time the question was asked; moreover, the prosecutor attempted to avoid reference to appellant's request for an attorney. We do not decide whether deliberate use of a defendant's request for an attorney to impeach testimony that the defendant was confused and disoriented would fit within the exception to Doyle, supra, enunciated in footnote 11 of that opinion.

inadmissible for any other reason. There is no merit to this enumeration of error. *Franklin v. State,* 245 Ga. 141 (5) (263 SE2d 666) (1980).

7. In his twelfth enumeration of error, appellant contends that matters extrinsic to the evidence impermissibly influenced the jury, depriving appellant of a fair trial by an impartial jury. This allegation was raised in appellant's motion for new trial. In support thereof, appellant offered a copy of a memorandum written by the district attorney and sent to the court administrator.

The letter recited that one of the jurors had visited the district attorney after the trial was over and expressed concern for the apparent lack of courtroom security for the safety of the empanelled jurors. Specifically, the juror had suggested that jurors not be herded through the spectator lobby in easy access to the public and friends and neighbors of the defendant on trial. The memorandum stated, "It seems that because of these worries, some of the jury panel felt intimidated and expressed to each other the possibility of not rendering a fair verdict based on the evidence, but one motivated by fear."

"The affidavits of jurors may be taken to sustain but not to impeach their verdicts." Code Ann. § 110-109. There are limited exceptions to this rule. *Watkins v. State,* 237 Ga. 678 (229 SE2d 465) (1976). Compare, *Aguilar v. State,* 240 Ga. 830 (1) (242 SE2d 620) (1978).

If we were to assume an exception here, we still could not agree that appellant has shown that he was deprived of a fair trial by an impartial jury. The letter offered to "prove" lack of a fair trial was merely hearsay. Moreover, the letter indicates only a "possibility" of a verdict motivated by fear. Appellant has not shown that the verdict was not based upon the evidence or that it was motivated by fear. This enumeration of error is meritless.

8. Appellant contends in his brief that reversible error occurred when the court allowed the chief investigating officer to remain at the state's table throughout the trial in violation of the rule of sequestration.[7]

Under the Georgia Unified Appeal Procedure, this court "shall review each of the assertions of error timely raised by the defendant during the proceedings in the trial court regardless of whether or not

---

[7] Code Ann. § 38-1703 states: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness.

an assertion of error was presented to the trial court by motion for new trial, and regardless of whether error is enumerated in the Supreme Court." Code Ann., Appendix to Chapter 27-25, Rule IV (b) (2). Thus we address this allegation of error even though it was not included in appellant's enumerations of error.

"It has been repeatedly held that it is within the discretion of the trial judge to permit a witness to remain in the courtroom to assist either the State or the accused." *Benton v. State,* 9 Ga. App. 291 (6) (71 SE 8) (1911). This exercise of discretion should be based on a stated need by the party requesting the exception. *Montos v. State,* 212 Ga. 764 (3) (95 SE2d 792) (1956). Here the state informed the court that it had almost one hundred exhibits and the assistance of the chief investigating officer was necessary to properly present the case. The trial court did not abuse its discretion by allowing the witness to remain. *Disby v. State,* 238 Ga. 178 (1) (231 SE2d 763) (1977); *Jarrell v. State,* 234 Ga. 410 (6) (216 SE2d 258) (1975).

Appellant further contends that even if the trial court properly allowed the witness to remain at the state's table, the witness should have been required to testify first, absent some showing by the state of a need to present his testimony later. See *McGruder v. State,* 213 Ga. 259 (9) (98 SE2d 564) (1957). But a trial court may allow a witness excepted from the rule to testify after other witnesses have testified if the opposing party does not request the court to require the witness to testify first. Appellant made no such request. See, *Lloyd v. State,* 146 Ga. App. 584 (1) (246 SE2d 697) (1978); *Colson v. State,* 138 Ga. App. 366 (7) (226 SE2d 154) (1976).

Appellant's allegations with regard to the Rule of Sequestration are without merit.

## Sentence Review

The death penalty imposed in this case is automatically reviewed by this court under the standard set forth in Code Ann. § 27-2537. Moreover, since the indictment in this case was returned April 21, 1981, the Georgia Unified Appeal Procedure is applicable to this case.

9. Except as noted in Division 8 of this opinion, we find no matters not enumerated as error that need to be addressed.

10. Upon review of the record in this case, we conclude that the sentence of death was not imposed under the influence of passion, prejudice, or other arbitrary factor.

11. The jury found as a statutory aggravating circumstance that "the murder of Gregory Mullinax was committed against a peace officer while engaged in the performance of his official duties." See Code Ann. § 27-2534.1 (b) (8). The evidence supports a finding of this

aggravating circumstance beyond a reasonable doubt. Code Ann. § 2534.1 (c); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

12. Appellant contends that the death sentence should be set aside because it is excessive and disproportionate under the facts and circumstances of this case. We disagree.

The cases reviewed include all murder cases resulting in a life or death sentence appealed to this court since January 1, 1970, involving the killing of a police officer or correctional officer. Of the twelve death cases included in the appendix, the four earliest do not involve any statutory aggravating circumstances as these cases predate our 1973 death penalty law. They are included to illustrate the willingness of juries to impose the death sentence for the murder of a police officer. In the remaining eight cases, a finding of (b) (8) was present. In *Stevens* the only aggravating circumstance left after our review was (b) (8) (jury findings of (b) (7) and (b) (10) were reversed).

The nine life cases chosen for comparison are: *Jordan v. State,* 247 Ga. 328 (276 SE2d 224) (1981); *Gore v. State,* 246 Ga. 575 (272 SE2d 306) (1980); *Whitaker v. State,* 246 Ga. 163 (269 SE2d 436) (1980); *Lemley v. State,* 245 Ga. 350 (264 SE2d 881) (1980); *Washington v. State,* 245 Ga. 117 (263 SE2d 152) (1980); *Muhammad v. State,* 243 Ga. 404 (254 SE2d 356) (1979); *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977); *Cromer v. State,* 238 Ga. 425 (233 SE2d 158) (1977); *McElroy v. State,* 237 Ga. 245 (227 SE2d 255) (1976).

In *McElroy* and *Gore,* the murder or the trial occurred when there was no death penalty in effect. *Muhammad* was a Fulton County case in which the death penalty was waived (the jury had difficulty reaching a verdict of guilty). *Jordan* and *Whitaker* were cases arising out of a prison riot and escape attempt at Reidsville; it was not possible to determine who actually inflicted the fatal wounds.

Extenuating circumstances not present in the instant case existed in both *Patterson* (not totally implausible claim of self-defense and racial and religious harassment) and *Washington* (insanity defense presented).

We conclude that appellant's sentence of death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Weltner, J., who dissents to Division 1 (b).*

DECIDED OCTOBER 5, 1982 —
REHEARING DENIED NOVEMBER 29, 1982.

*Al Johnson, Mike Treadaway,* for appellant.

*Thomas J. Charron, District Attorney, Charles C. Clay, Assistant District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

### APPENDIX.

*Johnson v. State,* 226 Ga. 378 (174 SE2d 902) (1970); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980); *Lewis v. State,* 246 Ga. 101 (268 SE2d 915) (1980); *Stevens v. State,* 247 Ga. 698 (278 SE2d 398) (1981); *Wallace v. State,* 248 Ga. 255 (282 SE2d 325) (1981).