S02A0533. WRIGHT v. THE STATE.
(569 SE2d 537)

THOMPSON, Justice.

Defendant Mark Wright was convicted of malice murder in connection with the death of Michael Platt.[1] He appeals asserting, inter alia, the State violated his Fifth Amendment right to remain silent because the arresting officer testified that he did not make a statement at the time of his arrest. We find no error requiring reversal, and affirm.

1. Viewing the evidence in a light favorable to the verdict, as we are bound to do,[2] we find the following:

Wright agreed to meet Platt at an apartment complex in Atlanta. When the two met, Wright pushed Platt and they began to fight. They scuffled on the sidewalk for four or five minutes until George Wheeler, Platt's friend, and another individual pulled them apart. Then Wright backed into the street and pulled a pistol from under his sweatshirt. Platt tried to run, but he tripped. Wright started shooting Platt; he continued to shoot him as he remained on the ground. All told, Wright shot Platt six times — three times in the head. He died at the scene.

The evidence is sufficient to enable any rational trier of fact to find Wright guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wright was arrested more than seven months after the shooting. He was taken into custody by Detective Jim Rose who found Wright in the course of searching Wright's girlfriend's apartment. Wright asserts his Fifth Amendment rights were violated when Rose testified that Wright did not make any statements or answer any questions at the time of his arrest.

---

[1] The crime occurred on November 16, 1997. The grand jury indicted Wright on February 10, 1998, charging him with malice murder, felony murder and aggravated assault. Trial commenced on March 20, 2000. The jury found Wright guilty on all counts of the indictment. On March 28, the trial court sentenced Wright to life in prison for malice murder and merged the remaining counts of the indictment with the malice murder count. Wright filed a timely motion for a new trial which was denied on October 26, 2001. Wright filed a notice of appeal on November 14, 2001. The case was docketed in this Court on December 21, 2001, and submitted for a decision on the briefs on February 11, 2002.

[2] *Willis v. State*, 263 Ga. 597, 598 (436 SE2d 204) (1993).

Rose testified as follows:

Rose: Once I got the search warrant for Mr. Wright the warrant was executed and Mr. Wright was located in the attic area and arrested and brought outside.

. . . .

Prosecutor: And what did you do with him once he was placed under arrest?
Rose: Once he was placed under arrest I transported him. He didn't make any statements to me. He didn't answer any questions. I asked him what his name was. He didn't —
Defense: Excuse me. May we approach very briefly, Judge?
Court: No. But you can preserve whatever that is until later.
Defense: Thank you.
Court: Go ahead.
Rose: He didn't make any statements. I asked if he was Mark Wright and he didn't answer me. So at that point I figured it was proper procedure to bring him back to our police station, bring him to our identification unit, have him fingerprinted to positively identify who he was.

Assuming arguendo that Rose's testimony constituted an improper comment upon Wright's silence, we find that it was harmless beyond a reasonable doubt. See *Hill v. State*, 250 Ga. 277, 283 (295 SE2d 518) (1982) (improper reference to a defendant's silence does not automatically require reversal); *Sims v. State*, 213 Ga. App. 151, 152 (444 SE2d 121) (1994) (same). After all, Wright never formulated an objection; thus, it is doubtful, at best, that he preserved the error for appellate review. *Hill*, supra. Moreover, it appears that the comment "was inadvertent and unresponsive on the part of the witness, and was not an intentional reference by the prosecution to the silence of the defendant where an innocent man would protest his innocence." *Sims*, supra. As in *Hill*, "the prosecutor made no reference to and did not attempt to capitalize on [defendant's] pretrial silence during closing arguments." Last, but not least, the evidence against Wright was overwhelming. Thus, error, if any, in the admission of Rose's comment does not require this Court to reverse Wright's conviction.

3. The trial court did not err in refusing to charge the jury that it could consider whether a State's witness was testifying under a grant of immunity. See *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982). There was absolutely no evidence that a State's witness was motivated to testify by an offer of immunity or leniency. *Burgess v. State*, 264 Ga. 777, 786 (25) (450 SE2d 680) (1994).

4. After the State rested, the defense presented the testimony of two witnesses; then Wright took the stand and testified on his own behalf. In the midst of Wright's testimony, the defense sought an in camera inspection of a sealed order which had been entered in an unrelated case.

That case involved the prosecution of one of the State's witnesses – George Wheeler – for felony possession of marijuana. Wheeler testified that he pled guilty and received first offender treatment; the defense cross-examined him with regard to that plea.

The trial court denied the motion for an in camera inspection of the sealed order entered in the prosecution of Wheeler. We find no error. The motion was made long after the State's witness testified and, therefore, was untimely. See *Remine v. State*, 203 Ga. App. 30, 31 (3) (416 SE2d 326) (1992). Moreover, Wright made no attempt to properly procure the record in the witness' case. Compare *Mangum v. State*, 274 Ga. 573, 574 (2) (555 SE2d 451) (2001), in which, at a pretrial hearing, the defense informed the trial court that it attempted to subpoena the juvenile records of certain witnesses who were scheduled to testify for the State.

5. Wright objected and moved for a mistrial when Agent John Harvey testified that Craig Evans told him Wright was involved in a "murder" and an assault on a witness to a "murder." In that regard, Wright argued that the use of the word "murder" amounted to a legal conclusion and prejudiced the defense. The trial court overruled Wright's mistrial motion.

"The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with." *Stanley v. State*, 250 Ga. 3, 4 (295 SE2d 315) (1982). Inasmuch as Agent Harvey merely repeated the words which Evans used, and Evans testified next, we find no abuse of discretion in the denial of Wright's motion for mistrial.

Contrary to Wright's contention, *James v. State*, 270 Ga. 675 (513 SE2d 207) (1999) does not stand for the proposition that a trial judge must give a curative instruction whenever a witness uses the word "murder." That the trial judge in that case gave such an instruction was simply one of several factors showing no abuse of discretion.

6. Following his conviction, Wright obtained new counsel who filed a motion for a new trial and asserted, inter alia, that trial counsel was ineffective. However, new counsel did not seek, and the trial court did not hold, an evidentiary hearing upon the ineffectiveness claim. It follows that the claim of trial counsel's ineffectiveness was waived. *Ray v. State*, 259 Ga. 868, 870 (12) (389 SE2d 326) (1990).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 16, 2002.

*Axams, Adams & Secret, Tony L. Axam*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.