## S97A1054. WILLIAMS v. THE STATE.
### (490 SE2d 381)

SEARS, Justice.

The appellant, Vanessa Williams, was convicted of the malice murder of Levi Bryant, of the possession of a firearm during the commission of a crime, and of the possession of a firearm by a convicted felon.[1] On appeal, Williams contends that the trial court erred in numerous respects during her trial. We agree that the trial court erred in one respect, and we assume, for purposes of this appeal, that the court erred on another issue. We conclude, however, that both of these errors were harmless. Because we find no merit to Williams's remaining enumerations of error, we affirm.

The evidence showed that the victim was married to Bernice Bryant, who had been best friends with Williams for years. On June

---

[1] The crimes occurred on June 8, 1991. Williams was indicted on January 28, 1992. Williams was tried on January 31 and February 1, 1996. The jury returned its verdict on February 1, and the trial court sentenced Williams on April 18, 1996. The court sentenced Williams to life in prison for murder, and to terms of five years in prison for the possession offenses, one sentence to run consecutively and the other concurrently. Williams filed a motion for new trial on April 18, 1996, and the court reporter certified the trial transcript on November 20, 1996. The trial court denied Williams's motion for new trial on February 27, 1997, and Williams filed her notice of appeal on March 6, 1997. The appeal was docketed in this Court on April 1, 1997, and was submitted for decision without oral arguments on May 26, 1997.

8, 1991, Bernice Bryant had gone to visit a girl friend, when Mr. Bryant drove up and began an argument with his wife. After the argument, Ms. Bryant and her friend walked to a local bar. Mr. Bryant followed them there and continued the argument with his wife. At this point Vanessa Williams drove up to the bar. Ms. Bryant, to escape the confrontation with her husband, jumped into Vanessa Williams's car and locked the doors. In response, Mr. Bryant started banging on the windows and hood of the car. Williams and Ms. Bryant drove away and went to a second bar. Upon reaching this bar, Ms. Bryant took Williams's gun from the car and placed it in her own purse.

Shortly after the women entered the bar, Mr. Bryant appeared again, and began another argument with his wife. Ms. Bryant testified that she then took the pistol out of her purse and threatened her husband, hoping he would leave. She testified that when he would not leave, she turned to Williams and stated that she and Williams should leave. According to Ms. Bryant, at that point, Mr. Bryant turned from his wife, went after Williams, "and started raging and all in her face." Williams testified that Mr. Bryant attempted to slap her face, but only tipped the end of her nose. Williams then grabbed the pistol from Ms. Bryant. Williams testified that she did not intend for the gun to go off. She stated that right as she grabbed the gun, it went off for the first time, and that the second shot was fired immediately thereafter when her hand hit a pool table. Additionally, Williams testified that she, Ms. Bryant, and Mr. Bryant were all close to one another when the gun fired.

Two employees of the bar testified for the state that they heard Williams, Ms. Bryant, and Mr. Bryant arguing; that they heard but did not see the first shot; that, after the first shot, they saw Mr. Bryant running across the room; that they saw Williams holding the gun straight up, parallel to the floor, pointed at Mr. Bryant; and that, as Mr. Bryant was nearing the exit sign, they saw Williams shoot Mr. Bryant.

The medical examiner who conducted the autopsy on Mr. Bryant testified that Mr. Bryant suffered two gunshot wounds, one on the side of the front of his body, which did not hit any internal organs and did not cause his death, and another to his back, which did cause his death.

1. Having reviewed the evidence in a light most favorable to the verdict, we conclude that the evidence is sufficient to support the convictions.[2]

2. In her first enumeration of error, Williams contends that the trial court erred in permitting the investigating officer, Detective

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Elim, to testify regarding out-of-court statements made to him by witnesses to the crime. In this regard, the trial court ruled, over defense counsel's objection, that Detective Elim's testimony was admissible to explain his investigation of the case.[3] Williams correctly asserts that this ruling was erroneous. The detective's conduct in investigating the case was not a relevant issue at trial, and, thus, his testimony to explain his investigation was inadmissible.[4] However, because other witnesses, including the two employees of the bar, testified, for all relevant purposes, to substantially the same events as those related by Detective Elim, Detective Elim's hearsay testimony was cumulative of other witnesses' testimony. We therefore conclude that the error in admitting the hearsay testimony was harmless.[5]

3. Williams next contends that the trial court erred in allowing Detective Elim to comment on Williams's silence.

In this regard, the detective testified that Williams came to headquarters to surrender, and that she brought "a firearm, a license for that firearm, and the receipt where she had purchased the firearm. She didn't wish to give any statements, and at that time I ceased the interview with her." The detective was later asked on cross-examination whether Williams had told him the gun she gave to him was her own. He responded "[t]hat's all she told me, yes sir." Williams contends that these statements constitute an improper comment on her silence.

Even assuming that the detective's statements were improper,[6] we hold that they were harmless. First, the evidence of Williams's guilt, in particular the evidence that Williams shot Mr. Bryant in the back as he was running away from her, was overwhelming.[7] Further, the detective's statements did not contrast Williams's silence with the story she testified to at trial. In this sense, the detective's statements did not strike at[8] or " 'point directly at the substance of defendant's defense.' "[9] Moreover, in cross-examining Williams, the prosecu-

---

[3] See OCGA § 24-3-2.

[4] *Render v. State*, 267 Ga. 848, 849-850 (2) (483 SE2d 570) (1997); *Teague v. State*, 252 Ga. 534, 535 (1) (314 SE2d 910) (1984); *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982).

[5] *Teague*, 252 Ga. at 537 (2); *Howard v. State*, 262 Ga. 78, 80 (5) (414 SE2d 198) (1992). Compare *Render*, 267 Ga. at 849-850 (hearsay testimony was not cumulative as the person whose statements the officer impermissibly testified to at trial did not testify, and the evidence of guilt was not overwhelming).

[6] See *Bruce v. State*, 263 Ga. 273 (3) (430 SE2d 745) (1993); *Mallory v. State*, 261 Ga. 625 (5) (409 SE2d 839) (1991).

[7] *Bruce*, 263 Ga. at 274; *Hill v. State*, 250 Ga. 277 (4) (295 SE2d 518) (1982).

[8] *Chapman v. United States*, 547 F2d 1240, 1248-1249 (5th Cir. 1977). See *Hill*, 250 Ga. at 284.

[9] *Benham v. State*, 259 Ga. 249 (2) (379 SE2d 506) (1989) (quoting *Smith v. State*, 244

tor did not attempt to use her pre-trial silence to impeach her.[10] Finally, the record does not demonstrate, and Williams does not assert, that the prosecutor attempted to take advantage of her pre-trial silence during closing arguments.[11]

4. We have examined Williams's remaining enumerations of error, and conclude that they are without merit.[12]

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs only in Divisions 1, 2, and 4.*

DECIDED OCTOBER 6, 1997.

*Richard E. Allen,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.

---

Ga. 814, 816 (262 SE2d 116) (1979)).

[10] See *Hill,* 250 Ga. at 284; *Chapman,* 547 F2d at 1249.

[11] *Hill,* 250 Ga. at 284; *Chapman,* 547 F2d at 1249.

[12] In those enumerations, Williams contends that the state improperly placed her character into evidence; that the trial court erred in permitting a prosecution witness to testify that she had warned the deceased that Williams intended to kill him; and that the trial court erred in a portion of its charge on aggravated assault.