## S99A1534. STANFORD v. THE STATE.
### (528 SE2d 246)

THOMPSON, Justice.

Defendant Robert Timothy Stanford was convicted of malice murder in connection with the death of Sherry Odums. This appeal follows the denial of Stanford's motion for a new trial.[1]

1. Viewed in a light to uphold the verdict, we find the following: On the night in question, Stanford met Odums, Perry Thomas, and Jerome Nixon at a bar, where they drank beer. Later, they went to a club where they drank a few more beers.

Stanford, Odums and Thomas left the club in Stanford's Camaro. Stanford drove to a wooded area and exited the car. Odums and Thomas exited the car, too.

In Thomas' presence, Stanford gave Odums $20 in exchange for sex; and they engaged in sexual intercourse two times. Then Stanford demanded that Odums perform oral sex. When she refused, Stanford became angry. He took back the $20 and strangled Odums with one hand. As Stanford and Thomas left in Stanford's car, Stanford threatened to kill Thomas if Thomas told anyone what had happened.

Odums' body was left in the woods. It was discovered one or two days later. A mud flap from Stanford's Camaro was found at the crime scene.

Forensic evidence determined that Odums died as a result of manual strangulation. DNA evidence collected from Odums matched DNA taken from Stanford.[2]

---

[1] Odums was murdered on November 27, or November 28, 1994. The grand jury indicted Stanford on May 22, 1995, and charged him with malice murder. Trial commenced on May 6, 1996, and the jury returned a guilty verdict on May 10, 1996. The trial court sentenced Stanford to life in prison the same day. Stanford's timely filed motion for a new trial was denied on June 11, 1999, and he filed a notice of appeal on July 6, 1999. The appeal was docketed in this Court on July 16, 1999, and submitted for a decision on the briefs on September 6, 1999.

[2] The frequency of the DNA banding pattern shared by the DNA taken from Odums and

The evidence was sufficient to enable any rational trier of fact to find Stanford guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court did not err in denying Stanford's motion for a new trial on the general grounds.

2. Stanford, who represented himself at trial, wished to impeach several witnesses by cross-examining them concerning prior inconsistent statements. The statements had been summarized and reduced to written form by interviewers. The State objected, arguing that Stanford could not confine his questions to one portion of the statements without reading the statements in their entirety aloud. The trial court agreed, and instructed Stanford that he would have to read the statements aloud if he wanted to cross-examine the witnesses about their statements. See OCGA § 24-3-38; but see *Brown v. State*, 119 Ga. 572 (5) (46 SE 833) (1904). In some instances, but not in every instance, Stanford balked at the trial court's ruling, stating he did not want to use the whole statements.[3] Nevertheless, Stanford read the statements into evidence before cross-examining the witnesses.[4] Stanford now asserts the trial court erred in requiring him to read the statements aloud because they contained, inter alia, irrelevant and prejudicial matter.[5] See *Brown v. State*, supra.

Pretermitting whether the trial court erred in requiring Stanford to read the statements out loud, whether Stanford acquiesced in the trial court's ruling, and whether Stanford's argument on appeal was raised below, we find no harm. In view of the testimony of several eyewitnesses that Stanford, Odums and Thomas left the club in Stanford's car, the eyewitness testimony of Thomas with regard to the murder, forensic evidence placing Stanford's car at the scene of the crime and corroborating Thomas' account of the murder, and DNA evidence pointing directly at Stanford, we find the evidence of Stanford's guilt to be overwhelming. It is highly probable that any error in requiring Stanford to read the statements aloud did not contribute to the verdict. *Johnson v. State*, 271 Ga. 375 (14) (519 SE2d 221) (1999); *Laney v. State*, 271 Ga. 194 (8) (515 SE2d 610) (1999); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

3. Stanford contends the trial court erred in permitting the State to introduce prior act evidence. We disagree.

---

Stanford is approximately one in ten million.

[3] In at least one instance, Stanford readily read the witness' statement, exclaiming that he had "nothing to hide."

[4] Stanford could have laid the foundation for his cross-examination by simply showing the witnesses their statements. OCGA § 24-9-83.

[5] For example, Stanford's ex-wife gave a statement in which she said that Stanford beat her everyday, and that she believed Stanford raped a woman in Georgia and killed a woman in Ohio.

The State introduced evidence of four prior acts: One woman, Stanford's ex-wife, averred that Stanford often beat and choked her when he was drinking; she added that Stanford began to beat her once when she refused to perform oral sex. Another woman testified that Stanford gave her a karate chop to the neck and raped her when she refused his sexual advances. She also testified that on another occasion, Stanford choked her, raped her, anally sodomized her, and tried to force her to perform oral sex. A third woman averred that Stanford demanded that she perform oral sex; that she refused; and that he hit her with his fist. Finally, the State introduced evidence in connection with the death of Judy Rucker, whose body was found in a wooded area in Florida.

The State demonstrated that Stanford and Rucker spent the evening with friends; that Stanford and Rucker went to Rucker's house; that they sat in Stanford's vehicle and talked; that Stanford offered Rucker $20 to engage in sex; that Rucker agreed; and that Stanford and Rucker climbed into the back seat of Stanford's car and began having sexual intercourse. The State also demonstrated that Rucker had convulsions and that Stanford "hit her to bring her around," but was unsuccessful; that Stanford pulled Rucker out of his car and dragged her into the woods; and that he left her there "breathing." Finally, the State demonstrated that Rucker's face was severely bruised.

We find no error in the admission of these prior acts under the standard set forth in *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991). It was clearly established that Stanford committed the acts; that they were sufficiently similar to the crime charged as to be probative; and that they showed Stanford's course of conduct and bent of mind in sexual encounters. See *Farley v. State*, 265 Ga. 622 (2) (458 SE2d 643) (1995); *Anderson v. State*, 228 Ga. App. 617 (2) (492 SE2d 252) (1997).

4. It has long been said that "Georgia does not recognize a declaration against one's penal interest as an exception to the rule prohibiting the admission of hearsay evidence." *Turner v. State*, 267 Ga. 149, 154, fn. 3 (476 SE2d 252) (1996); *Barksdale v. State*, 265 Ga. 9, 11, fn. 3 (453 SE2d 2) (1995); *Green v. State*, 242 Ga. 261, 271 (249 SE2d 1) (1978). What that means is that Georgia does not recognize a *third party's* admission against penal interest, when that admission exculpates the defendant:

> It is the long-standing rule in this state that declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial . . .

*Timberlake v. State*, 246 Ga. 488, 492 (271 SE2d 792) (1980); *Turner v. State*, 216 Ga. App. 896, 899 (2) (456 SE2d 241) (1995). See also Green, Ga. Law of Evidence (5th ed.), § 286. But this is not to say that a *defendant's* declaration against his penal interest is inadmissible. Our courts have often said that a defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest. See, e.g., *Hall v. State*, 235 Ga. App. 44, 46 (3) (508 SE2d 703) (1998); *Howard v. State*, 227 Ga. App. 5, 7 (2) (488 SE2d 489) (1997). That is because a *defendant's* declaration against penal interest is the admission of a party-opponent. See OCGA § 24-3-34; Rumsey, Agnor's Ga. Evid. (3rd ed.), § 11-13 (defendants' incriminating statements are admissible under the same theory as the exception to the hearsay rule for admissions of a party-opponent).

It follows that the trial court did not err in permitting a police officer to testify as to what Stanford told him in connection with the death of Judy Rucker.[6] Stanford's incriminating statement was admissible as an admission against his penal interest, see *Howard v. State*, supra, because Stanford's statement was the admission of a party-opponent. OCGA § 24-3-34.

5. Stanford complains that the trial court allowed a police officer to testify regarding the out-of-court statements of two witnesses who never testified at trial.[7] We find no harmful error. The witnesses' statements only indicated when they last saw Stanford, what car he was driving, where he worked, and the fact that Stanford and his wife were separated. Other witnesses testified to substantially the same facts. *Williams v. State*, 268 Ga. 452 (2) (490 SE2d 381) (1997).

6. The trial court properly denied Stanford's motion for discharge and acquittal in this capital case because Stanford requested a continuance[8] following the filing of his speedy trial demand. *Rice v. State*, 264 Ga. 846 (452 SE2d 492) (1995).

7. When the State introduced prior act evidence, Stanford requested a contemporaneous limiting instruction. The trial court advised Stanford that it would give such an instruction in its final charge to the jury, which it did. Stanford acquiesced to the trial court's ruling. He did not insist upon a contemporaneous charge; he did not stand his ground; he simply said "Okay." Thus, Stanford cannot complain further. *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d

---

[6] Stanford admitted that he paid Judy Rucker $20 to have sex; that he and Rucker had sexual intercourse in his car; that Rucker had a seizure and Stanford slapped her in the face to bring her out of it; and that he panicked, pulled her out of the car, dragged her into the woods, and left the area.

[7] The trial court allowed this testimony because the prosecutor stated that he would call the witnesses to testify later.

[8] Stanford wanted a continuance to give a defense expert time to perform his own DNA analysis.

188) (1992); *Sanders v. State*, 181 Ga. App. 117, 120 (2) (351 SE2d 666) (1986).

8. Stanford asserts the trial court erred in requiring him to wear a stun belt, and in failing to instruct the jury that the belt had no bearing on Stanford's guilt or innocence. In this regard, he also asserts that his decision to proceed pro se was not made knowingly, intelligently and voluntarily because the trial court did not inform him that he would be restrained by a stun belt and accompanied by guards. These assertions are without merit. Stanford never interposed an objection to the wearing of the belt. Furthermore, the record does not reflect that the jury could see the belt or that Stanford was prejudiced by it in any way. See *Young v. State*, 269 Ga. 478 (2) (499 SE2d 60) (1998) (use of electronic security measure is permissible where it is shielded from view and defendant is not harmed by its use).

9. Stanford contends that the trial court erred in failing to grant sufficient funds for experts *to testify* at trial. However, no request for such funds was raised below.[9]

10. Stanford's assertion that the trial court erroneously denied his motion to suppress evidence is without merit. Stanford's assertion is predicated on the notion that affidavits used to obtain several search warrants contained information that the affiant knew was false. More particularly, Stanford points out that, although in one affidavit, the affiant averred that Thomas said Stanford killed Odums at the crime scene, in other affidavits, the affiant averred that Thomas said Stanford killed Odums in his car.

This slight discrepancy between the affidavits, which consisted of several pages, does not suggest an intentional or reckless falsehood on the part of the affiant.[10] Besides, the allegedly false statement was not necessary to a finding of probable cause. See *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978); *Williams v. State*, 251 Ga. 749, 796 (312 SE2d 40) (1983).

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs in the judgment only as to Division 2.*

DECIDED MARCH 27, 2000.

*Moore & Studstill, Mitchell O. Moore, J. Reese Franklin*, for appellant.
*Robert B. Ellis, Jr., District Attorney, Timothy L. Eidson, Assis-*

---

[9] The trial court did grant Stanford's request to fund an independent DNA analysis. An expert performed that analysis and the results were given to Stanford. No further request was made with regard to funding experts.

[10] Although the affiant acknowledged that he had made a mistake, he denied that he deliberately lied.

*tant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.